(No. 48349.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. FRANCIS JOHNSON, Appellee.

*Opinion filed October 17, 1977.*

William J. Scott, Attorney General, of Springfield (James B. Zagel, Jayne A. Carr, and Gerri Papushkewych, Assistant Attorneys General, of counsel), for the People.

Shearer, O'Brien, Blood, Agrella & Boose, of St. Charles (Richard D. Shearer, of counsel), for appellee.

Lawrence D. Ehrlich and Thomas Canafax, Jr., of Borovsky, Smetana, Ehrlich & Kronenberg, of Chicago, for *amici curiae* Chicago Journeymen Plumbers' Local Union 130 *et al.*

MR. JUSTICE RYAN delivered the opinion of the court:

Defendant, Francis Johnson, was charged by criminal complaint with violating the Illinois Plumbing License Law (Ill. Rev. Stat. 1973, ch. 111½, par. 116.36 *et seq.*) by installing plumbing pipe and fixtures without a plumber's license. He moved to dismiss the complaint on the ground that the provisions of the Act which have prevented him from taking the licensing examination are unconstitutional. The trial court agreed, and dismissed the complaint. The State appealed directly to this court pursuant to Rule 302(a)(1). 58 Ill. 2d R. 302(a)(1).

Defendant has, as a general contractor, constructed numerous homes and apartment buildings in Kane County over the past 10 years. During his youth in South Dakota he acquired a knowledge of the plumbing trade from his father, and he used this knowledge to install the necessary plumbing in the buildings he constructed in Kane County. His work was inspected and approved repeatedly by various building inspectors, but he concedes that all the work was done without the license required by the Illinois Plumbing License Law. In 1974 he applied to the Department of Public Health to take the licensing examination. His application was rejected because he had not complied with certain statutory prerequisites for eligibility to take the examination, as provided by section 10 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 116.44):

"(2) The Director [of the Department of Public

Health] shall promptly approve the application for examination if:

\* \* \*

(d) the applicant has been engaged in plumbing as a registered plumber's apprentice for at least 5 years preceding the date of his application, or

(e) the applicant has submitted evidence that he has successfully completed an approved course of instruction in plumbing, sanitary engineering, or plumbing engineering in a trade school, college or university."

Section 8(8) of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 116.42(8)) required the Director of Public Health to:

"Prescribe uniform and reasonable rules defining what constitutes an approved course of instruction in plumbing, sanitary engineering, or plumbing engineering in colleges, universities, or trade schools, and approve or disapprove the courses of instruction offered by such colleges, universities, or trade schools by reference to their compliance or noncompliance with such rules. Such rules shall be designed to assure that an approved course of instruction will adequately teach the design, planning, installation, replacement, extension, alteration and repair of plumbing. In prescribing such rules the Director may consult with the Chief Sanitary Engineer of the Department of Public Health, the Senior Professor of Sanitary Engineering of the University of Illinois, and with the Board."

On July 25, 1975, a criminal complaint was filed charging defendant with the offense of engaging in the plumbing trade without a license. Defendant moved to dismiss the complaint, arguing that the requirement of a 5-year apprenticeship or completion of an approved course of study is an arbitrary obstruction to the taking of the examination and bears no reasonable relation to the protection of public health. The trial court granted defendant's motion, and held unconstitutional the statutory prerequisites for the taking of the licensing examina-

tion. It is the validity of these provisions which we are herein called upon to decide.

Reasonable regulation of a business is within the State's police power when such regulation is in the interest of protecting public health or safety. (*Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505.) The licensing and regulation of the plumbing trade is clearly subject to the State's power to safeguard public health. (*Douglas v. People ex rel. Ruddy* (1907), 225 Ill. 536.) In regulating a trade, the means of regulation must have a definite relation to the end of protecting public health. (*Scully v. Hallihan* (1936), 365 Ill. 185, 191; *People v. Weiner* (1915), 271 Ill. 74, 78.) We must determine, therefore, whether the statutory provisions under which defendant was charged, together with the regulations implementing those provisions, bear a reasonable relationship to the purpose of protecting the public from the hazards of shoddy plumbing.

It is undeniable that practical experience, such as apprenticeship, as a supplement to the proficiency necessary to pass the licensing examination, is a reasonable requirement to assure competent plumbing. Not every apprenticeship provision, however, when viewed in light of the entire act in which it appears, can pass constitutional muster. In *People v. Brown* (1950), 407 Ill. 565, and again in *Schroeder v. Binks* (1953), 415 Ill. 192, earlier plumbing license laws were invalidated by this court because the critical provisions of those laws granted to master plumbers an unregulated monopoly upon entrance to the profession. No one could take the examination to become a licensed master plumber until he had spent a stated term in the employ or under the supervision of a master plumber. These masters, however, were not required to employ or supervise any prospective competitors if they did not wish to do so. Even if they did, they were not subject to any controls upon the nature, duration, or

extent of instruction they afforded their charges. In *Brown* and *Schroeder* this court held that these prerequisites to licensing bore no reasonable relation to protection of the public health. We can say, therefore, that any apprenticeship provision, to be valid, (1) must not have the effect, when implemented, of conferring on members of the trade a monopolistic right to instruct, and (2) must be structured in such a way that the apprenticeship it requires is calculated to enhance the plumbing expertise of prospective licensees.

The law under which defendant was charged provides what might be termed an "educational alternative" to apprenticeship as a prerequisite for admission to the licensing examination. In lieu of apprenticeship an applicant may submit evidence that he has successfully completed an approved course of instruction in plumbing, sanitary engineering, or plumbing engineering in a trade school, college, or university. On its face, then, the present plumbing license law has attempted to cure the deficiency of monopoly control condemned in *Brown* and *Schroeder*. To determine, however, whether the objectionable effects of the earlier laws are actually avoided in the present law, we must ascertain if the educational alternative is meaningful and practical. If the prospect of educational preparation for the examination is merely illusory, then the current law, though valid on its face, cannot, in its application, be any more valid than those overturned in *Brown* and *Schroeder*. Such a determination cannot be made from the face of the statute alone.

As stated above, the Director of Public Health is instructed to implement the sparse language of the educational provision by defining what constitutes "an approved course of instruction," and to prescribe rules which insure that such instruction will adequately teach necessary plumbing skills. "Perhaps the first rule of construction as to administrative rules and regulations is

that rules made in the exercise of a power delegated by statute should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason." (2 Am. Jur. 2d *Administrative Law* sec. 307 (1962).) We must look, then, to the implementing regulations to determine whether the instruction required in lieu of apprenticeship has any vitality.

At the time relevant to this appeal, Rule V of the "Rules and Regulations for the Administration of Illinois Plumbing License Law" promulgated by the Department of Public Health was the only regulation on the subject of the educational prerequisite and provided as follows:

> "Any educational institution, referred to in an application for a plumber's license, offering a curriculum in plumbing, sanitary engineering or plumbing engineering that is substantially equal to the time required and curricula offered by the University of Illinois in plumbing, sanitary engineering or plumbing engineering, shall be considered for approval by the Department as an acceptable course of training. The applicant shall provide documentary evidence as a part of his application that he successfully completed such course of study."

Since that time a new set of regulations has been promulgated which replaces the above. These regulations are not at issue in this case, and so we express no opinion as to whether or not they adequately implement the statutory provisions.

The State does not suggest that the Director had in fact approved the course of instruction of any school (besides, of course, the University of Illinois) at the time in question. Even if he had, however, we are not persuaded that one desirous of taking the licensing examination is afforded a practical alternative to apprenticeship by the opportunity to enroll in a course of study "equal to the time required and curricula offered by the University of Illinois in plumbing, sanitary engineering or plumbing

engineering." We believe this regulation lacks the specificity contemplated by the legislature when, in section 8(8), it authorized the Director to prescribe rules regarding the details of the Act's educational alternative. The overly general nature of the regulation's requirement of equivalence to the University of Illinois curriculum, especially when combined with the fact that no other schools had yet been approved, is disconcerting in two particulars. First of all, the regulation's ambiguity raises serious questions about the nature, extent, and complexity of the University of Illinois curriculum purportedly made the standard by which other curricula are to be judged, and about the relationship between that curriculum and the desired end of achieving a community of experienced plumbers. The regulation tacitly approves the university's curriculum in sanitary *engineering,* plumbing *engineering,* and plumbing. The opportunity to learn sanitary engineering or plumbing engineering is not a palatable alternative to one whose goal it is to learn the plumbing trade. The part of the regulation which permits a prospective plumber to take such courses is unrelated to protecting the public from incompetent plumbers (rather than incompetent engineers). Further, we are not convinced that the educational alternative, as implemented by this regulation, is reasonably related to the goal of practically educating *plumbers* simply because the regulation also intimates approval of courses equal to the University of Illinois' plumbing curriculum. The Act requires that the "Director shall" prescribe rules defining what constitutes an approved course of instruction. The rule promulgated did not do so. Under this regulation the plumbing license law could be implemented in such a way as to discourage use of the educational alternative by requiring excessive study prior to admission to the licensing examination. The practical utility of the educational alternative is thereby destroyed through its implementation, and the present act

is made subject to the same objections of plumbers' monopoly voiced in *Brown* and *Schroeder.*

The second problem caused by the regulation's lack of specificity is its failure to fulfill the mandate of section 8(8) "to assure that an approved course of instruction will adequately teach the design, planning, installation, replacement, extension, alteration and repair of plumbing." That provision of the statute was apparently designed to assure that the preexamination education of an applicant for a plumbing license bears a reasonable relation to protecting the public health. Once again, however, though the legislative scheme as written seeks to avoid constitutional infirmity, its implementation causes it to fall short. By not requiring that the teaching of any particular skills be a part of an approved course of instruction, the regulation has neglected to insure that there is any connection between the knowledge acquired from such course of instruction and the proficiency which a plumber needs to pursue his trade competently. In short, the Director has not fulfilled his duty of implementing the statute.

In light of the deficiencies catalogued above, the conclusion is inescapable that the alternative to apprenticeship which the Act purports to create is illusory. The remaining provisions of the Act, therefore, confer upon licensed plumbers essentially the same monopolistic right to instruct and control entry into the trade which they had prior to *Brown* and *Schroeder.* Unless properly implemented the present act preserves the seeds of the same monopolistic practices condemned in *Brown* and *Schroeder.*

We conclude that the Illinois Plumbing License Law, as implemented by the regulations in force at the time of the offense with which the defendant is charged, was invalid. We express no opinion as to the validity of the Act as it is implemented by the regulations now in force. We hold that the charge against the defendant must for this

reason be dismissed, and we therefore affirm the judgment of the circuit court of Kane County.

*Judgment affirmed.*