(No. 76583.—

ROBERT HERMAN CHURCH, Appellant, v. THE STATE OF ILLINOIS, Acting Through the Illinois Department of Professional Regulation, *et al.*, Appellees.

*Opinion filed January 19, 1995.*

154

Jerry Tice, of Grosboll, Becker, Tice & Smith, of Petersburg, for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of Chicago, of counsel), for appellees.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

The plaintiff, Robert Church, filed an application with the Illinois Department of Professional Regulation (Department) seeking a private alarm contractor's license. After the Department denied the plaintiff's application, the plaintiff filed a complaint for administrative review in the circuit court of Menard County, seeking reversal of the Department's decision. The circuit court reversed the Department's decision and ordered the Department to issue the plaintiff a license. The appellate court reversed the circuit court's order and reinstated the administrative decision. This court allowed the plaintiff's petition for leave to appeal (145 Ill. 2d R. 315).

## I. FACTS

On April 4, 1988, the plaintiff purchased a private alarm contracting business and began operating the business on a part-time basis. The plaintiff worked approximately 1,000 hours a year leasing, selling and servicing alarm systems. On May 8, 1991, the plaintiff learned that the Private Detective, Private Alarm and Private Security Act of 1983 (Act) (225 ILCS 445/4 (West 1992)) required him to obtain a license from the Department before engaging in the private alarm contracting business.

On May 31, 1991, the plaintiff submitted an application for a private alarm contractor's license to the Department. The plaintiff characterized his application as one to obtain a license without examination. As part of his application, the plaintiff informed the Board that he was currently employed as a patrolman for the Petersburg police department, and had been employed in that capacity since 1984, working approximately 1,200 hours a year. The plaintiff also informed the Board that he had 18 years of experience as a police officer.

During such period of time, the plaintiff had investigated or assisted in investigating 50 different thefts or burglaries. The plaintiff also informed the Board that his police training included classes and seminars in field sobriety testing, mandatory firearms training, shooting decisions training, police traffic radar certification, use of force/civil liability, legal aspects of deadly force and night firearms, operation scams, domestic violence, criminal law, law for police, interview and interrogation, and an in-service refresher.

On September 12, 1991, the Private Detective, Private Alarm, and Private Security Board (Board) held a meeting where the plaintiff's application was considered. The Board recommended that the application be denied. The Director of the Department approved the Board's recommendation and notified the plaintiff that his application was denied "due to the fact that [his] experience does not meet statutory requirements" under the Act.

On October 25, 1991, the plaintiff filed a complaint for administrative review in the circuit court of Menard County, seeking reversal of the Department's decision and issuance of a private alarm contractor's license. On April 22, 1992, the circuit court remanded the matter to the Department. The court ordered the Department to inform the plaintiff of any informal standards that the Department might be using to determine the plaintiff's qualifications under section 14(c)(11)(C) of the Act. In the event that the Department denied the plaintiff's application, the court ordered the Department to provide reasons for the denial.

On May 13, 1992, the Board reconsidered the plaintiff's application and again recommended that the application be denied. The Board's recommendation was approved by the Director of the Department on June 22, 1992, who referred to the plaintiff's application as an

application to sit for the examination to obtain a private alarm contractor's license.

After receiving notification that the Department had again denied his application for a license, the plaintiff filed a two-count complaint in the circuit court of Menard County. The complaint sought reversal of the Department's determination that the plaintiff did not qualify for a license and an order compelling the Department to issue the plaintiff a private alarm contractor's license. Following a hearing, the circuit court entered an order finding that the Department's decision to deny the plaintiff's application was "clearly arbitrary and capricious and is hereby set aside." The court also ordered the Department "to issue to plaintiff a license to conduct business as a private alarm contractor."

The Department appealed, arguing that the administrative decision was not against the manifest weight of the evidence or arbitrary and capricious. The Department also argued that the circuit court exceeded its authority in ordering the Department to issue the plaintiff a license before the plaintiff took and passed an examination.

The appellate court reversed the circuit court's order and reinstated the Department's administrative decision. (251 Ill. App. 3d 942.) The court determined that the Department's denial of the plaintiff's application was a proper exercise of its discretionary authority under section 14(c)(11)(C) of the Act. One justice dissented, arguing that the statute was "constitutionally suspect" and that the Department failed to exercise the discretion granted it under section 14(c)(11)(C) of the Act (251 Ill. App. 3d at 949 (Cook, J., dissenting)). This court allowed the plaintiff's petition for leave to appeal (145 Ill. 2d R. 315).

In this appeal, the plaintiff has abandoned his

argument that the Department's denial of his application for a private alarm contractor's license was arbitrary and against the manifest weight of the evidence. Thus, the only issue presented for our review is whether section 14(c)(11)(C) of the Act, as interpreted by the Department, unconstitutionally grants members of the private alarm contracting trade an unregulated monopoly over entrance into the private alarm contracting trade. Although the plaintiff also argues that section 14(c)(11)(C) represents an unconstitutional delegation of legislative authority to the Department, he did not raise that claim before the circuit court or on appeal, and has therefore waived it for purposes of this appeal.

## II. ANALYSIS

The Private Detective, Private Alarm and Private Security Act of 1983 (225 ILCS 445/1 *et seq.* (West 1992)) makes it unlawful for any person to act as a private alarm contractor without first obtaining a license from the Department (225 ILCS 445/4 (West 1992)). Section 14(c) of the Act sets forth a number of requirements that a person must satisfy to qualify for a private alarm contractor's license. Under that section, a person qualifies for such a license if he or she:

(1) is at least 21 years of age;

(2) is a citizen or legal resident alien;

(3) has not been convicted of a felony;

(4) is of good moral character;

(5) has not been declared mentally or physically incompetent;

(6) is not addicted to alcohol or drugs;

(7) has not been dishonorably discharged from the United States military;

(8) ***

(9) has not acted as a private alarm contractor without a license, but such violation does not operate as an absolute bar to licensure;

(10) obtains liability insurance; and

(11) *meets statutory experience requirements.*

In addition to these requirements, section 14(c)(12) of the Act specifies that the Department *"may* conduct an examination which shall include subjects reasonably related to the activities licensed so as to provide for the protection of the health and safety of the public." (Emphasis added.) 225 ILCS 445/14(c)(12) (West 1992).

At issue in this appeal are the experience requirements set forth in section 14(c)(11) of the Act. That section provides:

"(B) *** all persons applying for licensure *** shall have a minimum of 3 years experience out of the 5 years immediately preceding his application as a full-time supervisor, manager or administrator for an agency licensed in the State of Illinois as a private alarm contractor agency, *or meet Departmental standards established pursuant to subparagraph (C) of this paragraph (11).*

(C) *If an applicant does not meet the experience requirements of subparagraph[ ] *** (B)* of this paragraph (11) such applicant may be issued a license upon recommendation of the Board and approval by the Director if in the judgment of the Board he satisfies standards of competence and experience for persons *not having experience with a private alarm contractor agency."* (Emphasis added.) (225 ILCS 445/14(c)(11)(B), (c)(11)(C) (West 1992).)

Regulations established by the Department to clarify the experience requirements specified in section 14(c)(11)(B) reveal that the Department defined a "year" to be 12 average work months "during which the applicant was engaged in full-time employment," and "full-time" to be "equal to 1800 hours annually or more." (68 Ill. Adm. Code § 1240.15(b) (1992).) At the time the Department denied the plaintiff's application, there were no regulations defining the experience required under section 14(c)(11)(C) of the Act. Although regulations were thereafter adopted interpreting that section, the Department did not rely upon such regula-

tions in denying the plaintiff's application and, thus, those regulations are irrelevant to the issues raised in this appeal. See *Murdy v. Edgar* (1984), 103 Ill. 2d 384; *People v. Johnson* (1977), 68 Ill. 2d 441.

It is undisputed that the plaintiff does not meet the experience requirements set forth in section 14(c)(11)(B) of the Act. Instead, the plaintiff claims that he has satisfied the competence and experience requirements of section 14(c)(11)(C) of the Act by virtue of his experience as a police officer and his experience working part-time for three years at the unlicensed alarm business that he owned.

As stated, the Department denied the plaintiff's application, finding that the plaintiff's experience does not meet the requirements of section 14(c)(11)(C). The Department gave the following reasons for its denial of the plaintiff's application:

"1. The intent of subparagraph (C) [of the Act] is to allow an applicant with the minimum allowable amount of experience in [the] private alarm contracting field that was acquired from other than an Illinois licensed private alarm contractor agency to qualify for the licensure examination.

2. The statute sets minimum experience for private alarm contractor agency employees to qualify for the licensure examination and all other candidates have been held to the same standard.

3. The applicant's experience is primarily in the area of law enforcement, not private alarm contracting. A law enforcement background may qualify an individual for examination in the private detective or private security contractor fields, but does not provide any experience in the private alarm contractor field, and therefore, cannot be counted as experience in the alarm field. The Board does not feel the amount of alarm experience offered by Mr. Church demonstrates an acceptable level of expertise to qualify to sit for the examination."

The reasons offered by the Department in support of its determination reflect that the Board interprets section

14(c)(11)(C) to require an applicant for a private alarm contractor's license to have worked (1) full-time, (2) in a supervisory, managerial or administrative capacity, (3) for three of the five years preceding the application, (4) in a business *within the private alarm contracting field in which the applicant acquired private alarm contractor experience.*

The Department determined that the plaintiff's experience at his own unlicensed private alarm contracting business does not satisfy section 14(c)(11)(C) because the plaintiff had not operated that business on a full-time basis. The Board also determined that the plaintiff's experience as a police officer does not satisfy section 14(c)(11)(C) because that experience was outside of the private alarm contracting field.

The plaintiff argues that section 14(c)(11)(C), as interpreted by the Department, unconstitutionally grants members of the private alarm contracting trade an unregulated monopoly over entrance into the private alarm contracting trade. Before addressing the plaintiff's constitutional claim, we initially consider whether the Department's construction of section 14(c)(11)(C) is consistent with the legislature's intent, as expressed in the language of the statute.

## A. Legislature's Intent

The legislature has, in section 14(c)(11)(C), expressly delegated to the Department authority to determine what standards an applicant must satisfy to qualify for a license (when the applicant does not satisfy the experience requirements specifically delineated in section 14(c)(11)(B) of the Act). Where the legislature expressly or implicitly delegates to an agency the authority to clarify and define a specific statutory provision, administrative interpretations of such statutory provisions should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the stat-

ute. (See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778; *Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149; *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 97-98.) A court will not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778.

The trial court determined that the Department's interpretation of section 14(c)(11)(C) was inconsistent with the legislature's intent, because the Department considered an applicant eligible for a license under section 14(c)(11)(C) only if the applicant had worked in a private alarm contractor *agency*. The trial court found that the Department's interpretation contradicted the express language of section 14(c)(11)(C), which authorizes the Department to issue a license if the applicant has satisfied "standards of competence and experience for persons *not having experience with a private alarm contractor agency*." (Emphasis added.) 225 ILCS 445/14(c)(11)(C) (West 1992).

The Department points out, however, that the trial court improperly interpreted the scope of its decision. Under the Department's interpretation of subsection (C), a person who has never worked in a licensed private alarm contractor *agency* may nevertheless obtain a license if that person has worked within the private alarm contracting *field*. The Department notes, by way of example, that many large store chains have in-house personnel who implement, service and monitor the store's alarm systems. Although such stores are not licensed private alarm contractor agencies within the

meaning of the Act, applicants for licensure who have worked full-time for three years in a supervisory capacity in the alarm department of such stores may be considered eligible for a license under section 14(c)(11)(C) of the Act. The Department also suggests that the experience the plaintiff gained operating his own unlicensed alarm business may have satisfied the experience requirements of section 14(c)(11)(C), if the plaintiff had worked full-time, rather than part-time, in that capacity.

We find that the Department's conclusion that applicants for licensure satisfy the experience requirements of section 14(c)(11)(C) only if they have worked full-time for three years in a supervisory capacity within the private alarm contracting *field* is a permissible construction of that section. The Department's construction is therefore entitled to deference.

Our conclusion that the Department's construction of section 14(c)(11)(C) is reasonable is influenced in part by the fact that the legislature expressly adopted the Department's interpretation when it drafted the current version of the Act. The Private Detective, Private Alarm, and Private Security Act of 1993 (225 ILCS 446/1 *et seq.* (West Supp. 1993)) specifies that a person applying for a private alarm contractor license must have "a minimum of 3 years out of the 5 years immediately preceding application as a full time manager or administrator for an agency licensed as a private alarm contractor agency *or for an entity that designs, sells, installs, services or monitors alarm systems which in the judgment of the Board satisfies standards of alarm industry competence.*" (Emphasis added.) (225 ILCS 446/75(c)(8) (West Supp. 1993).) Where, as here, the legislature amends a statute soon after a controversy arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original statute. (*Granite City Division of National Steel Co.*

*v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 176-77; 1A N. Singer, Sutherland on Statutory Construction § 22.31, at 279 (5th ed. 1993).) Accordingly, we conclude that the Department's interpretation of section 14(c)(11)(C) is consistent with and reflects the legislature's intent.

## B. Constitutional Challenge

We must now consider the plaintiff's claim that section 14(c)(11)(C), as interpreted by the Department, is unconstitutional because it requires an applicant to have three years of employment with a private alarm contractor as a precondition to licensure. The plaintiff argues that the statute thereby grants members of the private alarm contracting industry an unregulated monopoly over entrance into the private alarm contracting trade.

The Department initially responds that the plaintiff waived his constitutional argument by failing to raise it in the trial court. We find, however, that the plaintiff adequately raised his constitutional claim at the trial level when he contended, in his complaint for administrative review, that the interpretation placed upon the Act by the Department unconstitutionally deprived him of his right to pursue a trade, occupation, business or profession and deprived him of equal protection and due process of law.

Turning to the merits of the constitutional challenge, the Department argues that the State, pursuant to its inherent police powers, may regulate businesses for the protection of public health, safety and welfare. (*Nebbia v. New York* (1934), 291 U.S. 502, 78 L. Ed. 940, 54 S. Ct. 505; *People v. Johnson* (1977), 68 Ill. 2d 441.) The Department notes that the legislature has expressly declared that private alarm contracting is a practice affecting the public health, safety and welfare, and therefore, is subject to regulation. 225 ILCS 445/3 (West 1992).

The fact that the legislature has invoked its police power to regulate a particular trade, however, is not conclusive that such power was lawfully exercised. (*People v. Brown* (1951), 407 Ill. 565, 572-73.) The means of regulation which the legislature adopts by statute must have a definite and reasonable relationship to the end of protecting the public health, safety and welfare. Here, we must determine whether those portions of the Act relating to the licensing of private alarm contractors bear a reasonable relationship to the legislature's goal of protecting the public from the hazards of incompetent private alarm contractors.

As stated, the plaintiff argues that the licensing provisions of the Act are unconstitutional because they impose unreasonable employment requirements on applicants and grant to members of the private alarm contracting industry an unregulated monopoly over entrance into the trade. As support for this argument, the plaintiff relies upon three decisions of this court, which declared plumbing licensing laws unconstitutional because critical provisions of those laws granted master plumbers an unregulated monopoly upon entrance into the plumbing trade.

In *People v. Brown* (1950), 407 Ill. 565, the court invalidated the 1935 plumbing license statute, which provided that a person could not take the examination to become a licensed master plumber until he had spent five years in the employment of a master plumber as an apprentice and then spent an additional five years in the employment of a master as a journeyman plumber. The statutes did not allow a person to learn the trade of journeyman plumber in any way other than by apprenticing with a master plumber. The statute did not, however, require master plumbers to employ or instruct any prospective competitors if they did not wish to do so.

The court found the statute unconstitutional, in part, because it gave master plumbers monopolistic control over the avenues of entry into the plumbing business. The court found that no matter how well qualified a person might be by instruction or training, that person could never become a certified registered plumber's apprentice, a journeyman plumber or a master plumber, unless a licensed master plumber so willed. By limiting the manner in which a person could learn the plumbing trade to apprenticeship with a master plumber, when many schools could offer similar instruction, the statute conferred on master plumbers an exclusive monopoly on instruction. The court concluded:

"The legislature conferred a special privilege upon master plumbers, as a class, when it gave them the arbitrary and exclusive right to determine who shall, or shall not, engage in the vocation of learning the trade of journeyman plumber, coupled with their having the sole right, with the uncontrolled exercise thereof, to instruct plumbers' apprentices in that trade." *Brown*, 407 Ill. at 583.

In *Schroeder v. Binks* (1953), 415 Ill. 192, the court considered the 1951 plumbing license statute, which the legislature enacted after this court declared the 1935 statute unconstitutional in *Brown*. The 1951 statute eliminated the requirement of employment by master plumbers and, instead, required that a master plumber supervise all plumbing work performed by journeyman plumbers and apprentices. The court concluded that, despite the change in language,, the new statute failed to cure the substantive defects found in the old statute. The court again determined that the statute was invalid, in part, because it gave master plumbers arbitrary and monopolistic control over the avenues of entry into the plumbing business.

In *People v. Johnson* (1977), 68 Ill. 2d 441, the court

invalidated yet another version of the plumbing licensing statute. In that statute, the legislature attempted to remedy the monopolistic control condemned in *Brown* and *Schroeder* by providing an educational alternative to apprenticeship. The statute provided that an applicant was eligible to take the plumbing licensing examination if he or she had been engaged as an apprentice to a master plumber for at least five years, or had completed an approved course of instruction in plumbing, sanitary engineering, or plumbing engineering at a trade school, college or university. Regulations implementing the statute provided that the educational alternative could be satisfied only by successfully completing an approved course of instruction equal to the time and curricula offered by the University of Illinois. The court determined that the regulations were not reasonably related to gaining experience in plumbing and failed to adequately inform a potential licensee of the studies needed to become a plumber. The alternative to a five-year apprenticeship was thus illusory, and the apprenticeship provision was found to confer upon licensed plumbers a monopolistic right to instruct and to control entry into the trade.

The *Johnson* court acknowledged that the legislature may reasonably require an applicant to have practical experience, such as an apprenticeship, as a prerequisite to licensure. The court established a two-part test to determine whether an apprenticeship provision is constitutionally valid: "(1) [the provision] must not have the effect, when implemented, of conferring on members of the trade a monopolistic right to instruct, *and* (2) [it] must be structured in such a way that the apprenticeship it requires is calculated to enhance the *** expertise of prospective licensees." (Emphasis added.) *Johnson*, 68 Ill. 2d at 447.

Viewing the instant Act in light of the two-part test

established in *Johnson,* we conclude that the licensing scheme for private alarm contractors is unconstitutional. The Act violates the first part of the *Johnson* two-part test, because it grants members of the private alarm contracting trade monopolistic control over individuals who wish to gain entrance into the field. Under the Act, as implemented by the Department, applicants without private alarm contractor experience do not qualify for licensure under the Act. An applicant can gain such experience only by being employed full-time for a licensed private alarm contractor agency or for an entity within the industry for three years in a supervisory or managerial capacity. No matter how well qualified a person may be by instruction, training or prior experience, he or she can never of his or her own free will become a licensed private alarm contractor unless a member of the regulated industry is willing to hire him or her on a full-time basis for the requisite time period in a particular capacity. The Act does not require private alarm contractors to employ a person who wishes to enter the field, nor does the refusal to employ such a person need to be based upon any valid reason. As in *Brown, Schroeder* and *Johnson,* it may be predicated upon an understanding between members of the private alarm contracting industry to limit the number of potential competitors allowed into the trade. In effect, the experience provisions within the Act, as implemented by the Department, give members of the private alarm industry an unregulated and monopolistic right to control entrance to the private alarm business.

The two decisions which the Department cites as authority for the proposition that the Act is constitutional are distinguishable. In *People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.* (1956), 8 Ill. 2d 330, the court upheld a portion of the Dental Practice Act that prohibited dental laboratory techni-

cians from constructing or repairing dentures, bridges or other replacements for teeth, except when employed to do so by a dentist. The court distinguished the statute from the plumbing license laws invalidated in *Brown*, *Schroeder* and *Johnson*. The court noted that "[t]here is in the present case no prescribed economic hierarchy, with access to each successive stage controlled by the dominant interest. Any person is free to become a dental laboratory technician. The statute places no artificial restraint upon him." (*A.A.A. Dental Laboratories*, 8 Ill. 2d at 337.) The statute at issue in *A.A.A. Dental Laboratories* did not prohibit access to the industry, but merely prohibited dental technicians from performing certain tasks within the industry unless they were performed under the guidance of a licensed dentist.

Here, on the other hand, a person who wishes to become a private alarm contractor is not free to obtain a license to practice that trade unless a regulated member of the industry agrees to employ him or her. Moreover, a potential applicant must remain employed full-time in a supervisory capacity for three years before he or she is even eligible to apply for a license. Thus, the instant Act, unlike that at issue in *A.A.A. Dental Laboratories*, places significant restraints upon a person who wishes to engage in the private alarm contracting trade.

The Department's reliance upon *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, is likewise misplaced. In that case, the court upheld a statute which required polygraph examiners to complete a six-month course of study prescribed by the Department of Registration and Education as a prerequisite for licensure. The court rejected an argument that the statute, like the plumbing licensing laws at issue in *Brown*, *Schroeder* and *Johnson*, was unconstitutional. In upholding the validity of the statute, the *Pellicano* court relied upon sev-

eral factors that do not exist under the instant statute. The court noted that the statute simply required a certain amount of course study as a prerequisite to licensure and did not require employment for a period of years before an applicant qualified for a license. The *Pellicano* court also noted that any person could obtain an internship license under the statute simply by applying and paying the required fee, and that the courses required by statute were not necessarily taught by licensed examiners. Thus, the court concluded that licensed examiners did not possess a monopolistic right to instruct prospective licensees. *Pellicano*, 83 Ill. 2d at 143-44.

Here, on the other hand, the plaintiff cannot obtain any amount of study at any school or vocational program that would qualify him for a license as a private alarm contractor. A person who wishes to become a private alarm contractor must be employed within the private alarm contracting industry for three years before he or she is eligible to obtain a license. We must therefore conclude that the instant statute, like the plumbing licensing laws condemned in *Brown, Schroeder* and *Johnson*, and unlike the statutes upheld in *A.A.A. Dental Laboratories* and *Pellicano*, grants members of a regulated industry monopolistic control over entrance into the private alarm contracting trade.

The instant Act also violates the second part of the test set forth in *Johnson*, because there is nothing to suggest that the nature and duration of employment required under the statute are calculated to enhance the expertise of prospective licensees. (*Johnson*, 68 Ill. 2d at 447.) Section 27 of the Act specifies that employees of a private alarm contractor agency who respond to alarm systems must complete at least 20 hours of classroom training on subject matters related to private security, such as: the law of arrest, search and seizure; civil and

criminal liability; the use of force; arrest and control techniques; elements of offenses under the Criminal Code; the law on private police; fire prevention and safety; service of process and report writing; and human and public relations. (225 ILCS 445/27 (West 1992).) An agency may, but need not, provide any additional training to employees who respond to alarm systems. Employees who do not respond to alarm systems and employees of other entities within the private alarm field are not required by statute to receive *any* particular training.

Even a cursory review of the plaintiff's application for licensure demonstrates that the plaintiff received training in almost every subject matter listed in section 27 while employed as a police officer. Thus, it appears that the training the plaintiff received outside the private alarm contracting field is at least equal to, if not more extensive than, the limited training statutorily required of employees within the private alarm contracting industry. The Department's brief suggests that the plaintiff lacked sufficient electrical experience to qualify for licensure under the Act. Yet, under the Department's interpretation of the Act, an applicant with the plaintiff's experience and extensive electrical experience would still not qualify for licensure unless he or she was employed full-time for three years in a supervisory capacity within the private alarm contracting field. While the legislature and the Department may have rationally believed that practical experience is necessary to assure competence in the private alarm contracting trade, there is nothing to suggest that the duration and type of experience required under the Act is necessary to enhance the expertise of prospective licensees. There is nothing in the record to suggest that the expertise needed to be a competent private alarm contractor can be provided only by full-time employment

as a private alarm contractor for three years in a supervisory capacity. Accordingly, we conclude that the Act, as interpreted by the Department, violates the second prong of the *Johnson* test.

In light of the deficiencies noted above, we conclude that section 14(c)(11)(C) of the Act, which the Department construes to require applicants for a private alarm contracting license to have worked full-time within the private alarm industry for three years in a supervisory capacity, is invalid. This portion of the Act confers upon members of a regulated industry a monopolistic right to instruct and control entry into the private alarm contracting trade. Moreover, the experience requirements are not calculated or necessary to enhance the expertise of prospective licensees.

## C. Licensing Examination

Although we agree with the plaintiff's argument that the experience requirements for private alarm contractors under the Act are invalid, we reject his claim that the circuit court properly ordered the Department to issue him a license. Nothing in the statute or the record before us supports the circuit court's conclusion that the plaintiff is *automatically* entitled to a license. As previously noted, section 14(c)(12) of the Act specifically states that the Department "*may* conduct an examination which shall include subjects reasonably related to the activities licensed so as to provide for the protection of the health and safety of the public." (Emphasis added.) (225 ILCS 445/14(c)(12) (West 1992).) Here, the Department determined that the plaintiff was not qualified to sit for the examination, because his experience did not meet statutory requirements. Our conclusion that the statutory experience requirements are invalid does not *ipso facto* lead to the conclusion that the plaintiff is entitled to a license. Rather, we simply reverse the Department's finding that

the plaintiff is not qualified to take the licensure examination. Our decision does not affect the validity of that portion of the Act which authorizes the Department to conduct an examination.

For the foregoing reasons, we reverse the judgments of the circuit court and the appellate court, set aside the decision of the Department, and remand this cause to the Department with directions that the plaintiff shall be allowed to sit for the licensing examination.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*department decision set aside;*
*cause remanded with directions.*