2026 IL App (1st) 241393-U
No. 1-24-1393

SIXTH DIVISION
February 6, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ABDUL KAPADIA, | ) | Appeal from the Circuit Court of Cook County, Illinois, County Department, Chancery Division |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 2023 CH 08325 |
| SHERIFF OF COOK COUNTY, THOMAS J. DART, COOK COUNTY SHERIFF'S MERIT BOARD, JOHN J. DALICANDO, BYRON BRAZIER, VINCENT T. WINTERS, KIMBERLY PATE GODDEN, TERRENCE J. WALSH, MARLA M. KAIDEN, WADE INGRAM, SR. and JAMES J. SEXTON, | ) ) ) ) ) ) ) ) ) | The Honorable Michael T. Mullen, Judge Presiding. |
| Defendants-Appellees. | ) ) | |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Gamrath concurred in the judgment.

## ORDER

¶ 1   *Held:*   The Cook County Sheriff's Merit Board's decision to terminate the plaintiff's employment with the Sheriff of Cook County is affirmed.

¶ 2       This matter comes before this court on appeal pursuant to Illinois Supreme Court Rules 301 and 303 stemming from a final administrative decision terminating plaintiff-appellant Abdul

Kapadia's employment with the Sheriff of Cook County. Plaintiff then brought an administrative review action in circuit court to appeal the final administrative decision.

¶ 3 Following briefing and oral argument, the circuit court affirmed the final administrative decision in its entirety and dismissed plaintiff's complaint with prejudice. Plaintiff now appeals. For the following reasons, we affirm.

¶ 4                                                    I. BACKGROUND

¶ 5 Plaintiff was hired as a Deputy Sheriff for the Sheriff of Cook County on February 17, 1998. Plaintiff was promoted to the rank of Deputy Sheriff's Sergeant in May 2003. Plaintiff was assigned to the CCSO Court Services Department at the Daley Center.

¶ 6 Court Services deputy sergeants were assigned different work areas within the Daley Center building at different times of the year. As a deputy sergeant, plaintiff was expected to periodically conduct personal observations of the courtrooms on his assigned floors to ensure that judges presiding could timely receive security assistance if needed. He was also expected to monitor the deputies reporting to him and personally assist those deputies in providing security if they required assistance. Plaintiff was permitted to take a paid, one-hour lunch break each day, the timing of which varied depending on when there was a lull in activity and sufficient coverage by other sergeants. Plaintiff was not required to sign out for lunch breaks.

¶ 7 On July 30, 2021, plaintiff worked the 8:30 a.m. to 4:30 p.m. shift and was assigned to posts 1 and 3 (the public entrances to the building) and floors 4 through 16. On the date in question, five deputy sergeants were on duty and plaintiff was responsible for eight to nine Sheriff's deputies.

¶ 8

¶ 9    At 11:00 a.m. on July 30, 2021, after completing rounds at his posts and each of his floors, plaintiff informed a coworker that he was taking a lunch break. Plaintiff then left the Daley Center wearing a White Sox jersey over his uniform. Thereafter, he met with a female civilian who approached the courthouse in a vehicle. Plaintiff greeted the civilian and got into the driver's side of the vehicle. The two traveled less than a mile east of the Daley Center, near East Randolph Street and North Stetson Avenue.

¶ 10    Court Services deputy sergeants are required to notify their supervising lieutenant (or a Sheriff's superintendent) should they intend to leave the Daley Center during the workday. Plaintiff did not inform his supervisor, Lieutenant Kristin Marunde, or a Sheriff's superintendent that he was leaving the courthouse.

¶ 11    Plaintiff was assigned a body-worn camera. At 11:29 a.m. on July 30, 2021, plaintiff's body-worn camera activated and recorded footage until 11:31 a.m. In the footage, plaintiff was observed touching his female companion inappropriately on her breasts while in the back of a vehicle. Upon the activation of the camera, a red light is shown on a female civilian. Plaintiff then exclaimed "Oops." The female is positioned on top of plaintiff in at least a portion of the video.

¶ 12    Court Services personnel, chiefly supervisors, are assigned body-worn cameras. CCSO policy requires Court Services personnel to wear their body-worn cameras while on duty and to use the cameras to record incidents in progress. Deputies are required to electronically "tag" all recorded footage at the end of each day by logging and classifying each piece of footage from a menu of descriptive categories. The "accidental activation" tag is used for footage that results from accidental activation of a body-worn camera. Plaintiff did not tag the footage recorded on July 30, 2021.

¶ 13    Deputy sergeants are also responsible for creating daily supervisor management logs. The logs document the sergeants' subordinate deputies' assignments and any events that occurred throughout the day. In plaintiff's July 30, 2021, supervisory management log, in the "Narrative/Comments" section, he wrote that he was "assigned to POST #1 around 1100 hrs to 1200 hrs,also [*sic*] went to my floors." Plaintiff did not record any other activities during those hours, nor did plaintiff record any alleged activities for other time periods on July 30, 2021.

¶ 14    As part of her duties, Lieutenant Marunde periodically reviews video footage from Sheriff's deputies' body-worn cameras. On August 10, 2021, while Lieutenant Marunde was conducting a periodic review, she viewed the footage recorded from plaintiff's body-worn camera on July 30, 2021. After viewing the video, Lieutenant Marunde filed a complaint register against plaintiff.

¶ 15    Investigator Georgia Garcia of the Sheriff's Office of Professional Review then began investigating plaintiff's activities on July 30, 2021. As part of her investigation, she reviewed the body-worn camera footage as well as footage taken from video surveillance cameras stationed in and around the Daley Center. She also conducted an audio-recorded interview with plaintiff on December 2, 2021.

¶ 16    Based upon her review of the video surveillance, Investigator Garcia determined that plaintiff left the Daley Center around 11:00 a.m. and did not return until 12:03 p.m. Ultimately, Investigator Garcia concluded that plaintiff acted in a manner unbecoming of a member of CCSO by entering false information in his supervisor log, failing to tag his body-worn camera, and engaging in inappropriate behavior while on duty.

¶ 17    A. Administrative Hearing and Merit Board's Final Administrative Decision

¶ 18    On June 10, 2022, Sheriff Dart filed disciplinary charges against plaintiff before the Cook County Sheriff's Merit Board alleging that plaintiff violated multiple policies of the CCSO Court Services' Policies, specifically policies 101.3, 101.4, 101.5.1, 101.5.2, and 101.5.5. In relevant part, the CCSO Court Services' Policies provide:

> 101.3 COMPLIANCE WITH ALL LAWS, ORDINANCES AND REGULATIONS
>
> Members shall *** comply with lawful rules, written or verbal orders, Sheriff's Office Employment Action Manual (SEAM) articles, policies and procedures issued by the Sheriff's Office or any supervisor. ***
>
> 101.4 CONDUCT POLICY
>
> The continued employment or retention of every Sheriff's Office member shall be based on conduct that reasonably conforms to the guidelines set forth herein.
>
> Failure of any member to meet the guidelines set forth in this policy or any other policy, procedure, post order, or directive of the Sheriff's Office, whether on- or off-duty, may be cause for disciplinary action, up to and including termination ***.
>
> A member's off-duty conduct shall be governed by this policy to the extent that it is related to any act that may affect or arise from the member's ability to perform official duties, or to the extent that it may be indicative of unfitness for his/her position.
>
> 101.5 CONDUCT THAT MAY RESULT IN DISCIPLINE

The following list of causes for disciplinary action constitutes a portion of the Sheriff's Office disciplinary standards. The list is not intended to cover every possible type of misconduct and does not preclude the recommendation of disciplinary action for specific action or inaction that is detrimental to efficient service. Conduct which may result in discipline includes, but is not limited to, the following:

101.5.1 ATTENDANCE

(a) Leaving the job to which one is assigned during duty hours without proper permission and approval.

101.5.2 CONDUCT

(o) On-duty sexual relations including, but not limited to, sexual intercourse, excessive displays of public affection, or other sexual contact.

101.5.5 PERFORMANCE

(n) The falsification of any work-related records, the making of misleading entries or statements with the intent to deceive; or the willful and unauthorized destruction, alteration, removal, and/or mutilation of any Sheriff's Office record, book, paper, or document.

(aa) Any knowing or negligent violation of the provisions of a policy, operating procedure or other written directive of an authorized supervisor.

> 1. Members are responsible for reading and becoming familiar with the contents of applicable policies and procedures, and are responsible for compliance with the content contained therein.
>
> (ar) Any other on- or off-duty conduct which a member knows or reasonably should know is unbecoming a member of the Sheriff's Office; which is contrary to good order efficiency, or morale; or which tends to reflect unfavorably upon the Sheriff's Office or its members.

¶ 19    A full evidentiary hearing was held before the Merit Board on May 16, 2023. At the hearing, the Sheriff's Office presented two witnesses, Investigator Garcia and Lieutenant Marunde, and introduced ten documentary exhibits, an audio exhibit, and a video exhibit. Plaintiff testified on his own behalf and introduced two exhibits: a group exhibit containing multiple Court Services deputy sergeants' supervisor logs and a document showing the sick and benefit time plaintiff had accrued.

¶ 20    Lieutenant Marunde testified that deputy sergeants are considered "on-duty" throughout their whole eight-hour shift, including their paid lunch hour. She also testified that deputy sergeants are required to notify her, as the supervisor, or the superintendent if they are leaving the building and confirmed that plaintiff did not inform her that he was leaving the Daley Center on the date in question. Lieutenant Marunde explained that deputy sergeants are expected to complete a daily supervisor management log. While Lieutenant Marunde stated that deputy sergeants were "encouraged" to document lunch breaks on their logs, she acknowledged that there was no policy requiring such information to be listed on the log. Lieutenant Marunde also testified that staff assigned body-worn cameras are supposed to tag any recorded video and that "every footage needs

to be tagged." Lieutenant Marunde provided an account of the sexual conduct she witnessed during her review of plaintiff's untagged body camera footage.

¶ 21        Investigator Garcia also testified as to her review of the body-worn camera footage and the sexual conduct therein. She also testified that she reviewed surveillance footage from in and around the Daley Center to determine plaintiff's movements from 11 a.m. to 12 p.m. and found that he had left the building during that time. She further testified about her recollection of the audio-recorded interview with plaintiff. Although plaintiff told her that he was comforting the female civilian because she was upset about having to return to her home country, Investigator Garcia believed that he was being untruthful because the footage did not show him uttering any statements of comfort. She also stated that plaintiff acknowledged that his actions were inappropriate.

¶ 22        Plaintiff testified that he was unaware of any policy requiring deputy sergeants to notify a supervisor or the superintendent prior to leaving the Daley Center. Instead, plaintiff claimed that deputy sergeants would inform another sergeant that they were going on lunch to ensure their assigned area was covered while they were gone. Plaintiff testified that he advised another sergeant that he was taking a lunch break prior to leaving the courthouse but could not recall the sergeant's name.

¶ 23        Plaintiff stated that he was attempting to comfort a female friend because she had to leave the country. He claimed that they hugged each other in the back of her vehicle which triggered his body-worn camera. Plaintiff realized that his body-worn camera was on and attempted to "turn it off right away." He admitted that he did not tag the accidental video but stated that he believed he "turned it off right away so [he] thought there wasn't anything in there."

¶ 24        Plaintiff also testified that his July 30, 2021 supervisor management log stated that he was assigned to a post and patrolling the floors during his lunch break because it was cut-and-pasted

from his prior logs. Plaintiff testified that he only changed the narrative section when there was a particular incident such as a wedding, arrest, or some other event. Plaintiff introduced a group exhibit which showed that he had used the same exact language in the "Narrative" section of his supervisor management log for multiple days leading up to and following July 30, 2021. Additionally, the group exhibit demonstrated that some supervisor management logs prepared by other deputy sergeants indicated their lunch breaks, while other logs did not.

¶ 25      On August 24, 2023, the Cook County Sheriff's Merit Board issued a final administrative decision adopting the Hearing Officer's decision and terminating plaintiff's employment with the Sheriff of Cook County. The Merit Board found that plaintiff engaged in "inappropriate sexual conduct," "falsified his Supervisory Log when he indicated that he was stationed at Post 31 [sic] between the house of 11am-12pm", "failed to preserve and document the contents of his body worn camera video," and "left his post without proper permission" or notification to his lieutenant or a superintendent. The Merit Board further found that plaintiff violated CCSO Court Services' policies 101.1, 101.4, 101.5.1, 101.5.2, and 101.5.5 and Article X, Paragraph B of the Sheriff's Office's Merit Board Rules and Regulations which provides that "[n]o deputy sergeant will: [v]iolate any" Special, General, or Executive Order of CCSO nor any Sheriff's Office "Rules and Regulations," nor any Sheriff's Office "Directive."

¶ 26                    B. Circuit Court Administrative Review Appeal

¶ 27      Thereafter, on September 21, 2023, plaintiff filed an administrative review complaint in the Circuit Court of Cook County pursuant to Administrative Review Law, 735 ILCS 5/3-101 *et seq.* Plaintiff requested reinstatement, back pay, and other relief. The parties fully briefed the matter. Following a hearing on June 4, 2024, the circuit court issued an order affirming the final administrative decision. Plaintiff timely filed the instant notice of appeal on July 5, 2024.

¶ 28                                    II. ANALYSIS

¶ 29          Review of an administrative agency's decision is governed by the Administrative Review Law. 735 ILC 5/3-101 (West 2018). "When an appeal is from the circuit court's decision on a complaint for administrative review, we review the administrative decision rather than the decision of the circuit court." *Buchanan v. Cook County Sheriff's Merit Board*, 2023 IL App (1st) 220320, ¶ 56. Under Administrative Review Law, judicial review of an agency decision extends to "all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110. Our standard of review depends on the nature of the question presented, whether the question is one of law, one of fact, or a mixed question of law and fact. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (1998).

¶ 30          On review of an administrative agency's decision to discharge an employee, the scope of our review involves a two-step process: first, we determine whether the agency's findings of fact are contrary to the manifest weight of the evidence, and then we determine whether those findings of fact provide a sufficient basis for its conclusion that there was cause for the discharge. *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App. 3d 442, 446 (1st Dist. 2009).

¶ 31                          A. Merit Board's Factual Findings

¶ 32          Plaintiff raises two arguments against the Merit Board's findings of fact. First, he argues that the Merit Board's determination that he was "on-duty" at the time he engaged in sexual conduct was against the manifest weight of the evidence. Second, he argues that the Merit Board's determination that his supervisor management log was "false" was against the manifest weight of the evidence.

¶ 33          The findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct. 735 ILCS 5/3-110. A reviewing court may only set them aside

only if they are against the manifest weight of the evidence. *Buchanan*, 2023 IL App (1st) 220320, ¶ 56. Factual findings are only against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Crawley v. Bd. of Educ.*, 2019 IL App (1st) 181637, ¶ 17. "The fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently based on the same evidence does not justify reversal of the findings of the administrative agency." *O'Sullivan v. Bd. of Comm'rs*, 293 Ill. App. 3d 1, 9 (1st Dist. 1997).

¶ 34         Here, Lieutenant Marunde testified that plaintiff's paid, one-hour lunch break is considered "on-duty." However, she also testified that deputy sergeants are permitted to engage in certain activities during their lunch break which they normally would not be permitted to do, such as sitting in the back of a car or eating. Although plaintiff argues that this demonstrates that the Merit Board erred in determining that he was "on-duty" during his lunch break, he ignores and fails to address Lieutenant Marunde's further testimony that sergeants may be called off lunch at any time to assist with an incident. This indicates that plaintiff could reasonably expect to be called to active on-duty at any point during his lunch. The evidence here does not establish that only an opposite conclusion, that plaintiff was off-duty during his lunch break, was clearly evident. In fact, it supports the Merit Board's determination that plaintiff remained on-duty during his lunch break.

¶ 35         Notwithstanding, as defendants point out, the distinction between on- and off-duty is irrelevant to the Merit Board's decision to terminate because the Board found plaintiff had violated CCSO Policies 101.5.5 and 101.4, which generally prohibit on- or off-duty conduct which is unbecoming to or reflects unfavorably on the Sheriff's Office. See Policy 101.5.5(ar) (prohibiting "on- or off-duty conduct which a member knows or reasonably should know is unbecoming a member of the Sheriff's Office; which is contrary to good order, efficiency, or morale; or which tends to reflect unfavorably upon the Sheriff's Office or its members."); Policy 101.4 (members

may be subject to disciplinary action for off-duty conduct where the conduct "may be indicative of unfitness for his/her position). As plaintiff admitted that he was engaged in inappropriate physical contact in the back of a vehicle during his work hours, his argument is unavailing.

¶ 36    As to the Merit Board's determination that plaintiff falsified his supervisor management logs, plaintiff did not present evidence, claim, or attempt to argue that he was in the Daley Center from 11:00 a.m. to 12:00 p.m. "assigned to POST #1" and that he "also went to [his] floors." In fact, plaintiff admitted that he left the Daley Center. Incredulously, plaintiff instead argues that his July 30, 2021 log was not "false" because he simply copy-and-pasted his "Narrative" entry from prior logs and because he was not required to identify his lunch break in his log. Neither of these arguments demonstrate that his Narrative entry for 11:00 a.m. to 12:00 p.m. was true. The Merit Board's determination that plaintiff's July 30, 2021, supervisor management log was false was more than sufficiently supported by the manifest weight of the evidence.

¶ 37    B. Merit Board's Policy Interpretation

¶ 38    Plaintiff also claims that the Merit Board erred in determining that his conduct violated CCSO Policies. First, plaintiff claims that his sexual conduct in the back of a vehicle while on lunch break does not "relate to his ability to perform his duties or his fitness for his position" under Policy 101.4. Second, he argues that his failure to tag the body-worn camera footage was not a policy violation because there is no written policy that made tagging footage a requirement.

¶ 39    "This court affords substantial deference to an administrative agency's interpretation of a statute which the agency administers and enforces" as the agency makes informed decisions based on its experience and expertise. *Nat'l School Bus Service v. Dep't of Revenue*, 302 Ill. App. 3d 820, 825 (1st Dist. 1998). Administrative interpretations of statutory provisions "should be given substantial weight unless they are arbitrary, capricious, or manifestly contrary to the statute."

*Church v. State*, 164 Ill. 2d 153, 161 (1995). "A court will not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency \*\*\*." *Id.* at 162. Undisputedly, the Merit Board is charged with interpreting, administering, and enforcing CCSO's disciplinary rules. See 735 ILCS 5/3-101 *et seq.*; 55 ILCS 5/3-7012 (permitting the Merit Board to discharge an employee pursuant to the ARL). We, therefore, must afford the Merit Board deference in any reasonable interpretation of its rules.

¶ 40    The CCSO Court Services Policy provides that a failure to meet any policy, procedure, post order, or directive of the Sheriff's Office, whether on- or off-duty, may be cause for termination and governs off-duty conduct to the extent that it is related the member's ability to perform official duties or that may be indicative of unfitness for his position. See Policy 101.5, 101.4. Although plaintiff claims that his sexual conduct was not a violation because he was on lunch break, off-premises, out-of-uniform, and there were no witnesses. As noted above, the evidence demonstrates that he was on-duty during lunch. Policy 101.5.2(o) explicitly prohibiting on duty-sexual contact, and the Merit Board's determination that plaintiff violated the policy was entirely reasonable. Furthermore, it is reasonable to conclude that an officer's sexual conduct during work hours, in an area that may be accessible to the public, demonstrates unfitness for the position and hinders his ability to perform his official duties. Additionally, although plaintiff testified that he was not aware of an attendance policy which required him to inform his supervisor or the superintendent if he were to leave the building during his lunch break, Lieutenant Marunde testified that this was the policy based upon the need for staff to be able to react to an emergency incident. Lieutenant Marunde also testified that she calls sergeants off their lunch break if an emergency incident were to arise. Naturally, she must know whether her sergeants are in the building and able to react to an emergency. The Merit Board's interpretation that plaintiff failed

to obtain proper permission and approval before leaving the Daley Center and therefore violated the attendance Policy 101.5.1 was not unreasonable.

¶ 41     Finally, plaintiff's claim that he did not violate the policy by failing to tag his body-worn camera footage because it was not reduced to writing is unpersuasive. Both Lieutenant Marunde and Investigator Garcia testified that all body-worn camera footage was required to be tagged. In fact, none of plaintiff's testimony disputed that he knew of the requirement to tag video footage. Instead, his testimony revealed that he did not believe his body-worn camera had recorded video footage. Furthermore, CCSO Policy 101.4 provides that "failure of any member to meet the guidelines set forth in *** any other policy, procedure, post order, or directive *** may be cause for disciplinary action, up to and including termination." Based upon the broad language, it was not unreasonable for the Merit Board to determine that a failure to follow a verbal policy, procedure, directive, etc. could result in disciplinary action.

¶ 42                          C. Cause for Discharge

¶ 43     Finally, we determine whether there is sufficient basis for the Merit Board to discharge plaintiff for cause. Plaintiff provides a cursory, two-paragraph argument which claims that his conduct did not rise to the level of grounds to terminate his employment "for cause" based upon the fact that the conduct was not witnessed by anyone and only discovered through routine review. Plaintiff also argued that termination was improper because he had a spotless record for over 20 years with the CCSO.

¶ 44     In Illinois, a public employee can only be discharged for "cause." *Christenson v. Bd. of Fire and Police Commissioners of the City of Oak Forest*, 83 Ill. App. 3d 472, 476 (1st Dist. 1980). Cause is " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound

public opinion recognize as good cause for his no longer holding the position.' " *Id.* (quoting *Kresiser v. Police Board of City of Chicago*, 40 Ill. App. 3d 436, 441 (1st Dist. 1976)). However, violation of a single rule may constitute a sufficient basis for discharge. *Cruz v. Cook County Sheriff's Merit Bd.*, 394 Ill. App. 3d 337, 342 (1st Dist. 2009). The administrative agency is generally tasked with the question whether there is sufficient cause for discharge, and a reviewing court must afford that determination substantial deference. *O'Grady v. Cook Cty. Sheriff's Merit Bd.*, 260 Ill. App. 3d 529, 536 (1st Dist. 1994). An administrative decision to discharge for cause will only be reversed where it is arbitrary, unreasonable, or unrelated to the requirements of service. *Id.*

¶ 45    Here, while the disciplinary action was boiled down to plaintiff's conduct on one day, his conduct did not involve one single policy violation. During work hours and while on-duty, plaintiff left his assignment without proper approval, engaged in inappropriate sexual conduct, failed to tag his body-worn camera footage, and submitted a supervisor management report with false information regarding what he was doing during his lunch hour. See *Nelmark v. Bd. of Fire & Police Comm'rs*, 159 Ill. App. 3d 751, 758-58 (2d Dist. 1987) (a falsified report is cause for discharge). Particularly as a police officer "[t]rustworthiness, reliability, good judgment, and integrity are material qualifications." *Oak Lawn v. Human Rights Comm'n*, 133 Ill. App. 3d 221, 224 (1st Dist. 1987).  As defendants argue, the false report accompanied by the failure to tag footage, raises the question whether plaintiff was attempting to conceal his activities that day. Under these facts and given the deference we must afford to the administrative agency, we cannot say that the Merit Board's decision to discharge plaintiff was arbitrary, unreasonable, or unrelated to the requirements of service.

¶ 46                                III. CONCLUSION

¶ 47        For the foregoing reasons, we affirm the judgment of the circuit court affirming the decision of the Merit Board to terminate plaintiff's employment with the Cook County Sheriff's Office.

¶ 48        Affirmed.