No.  2--03--1322

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

CORINNE THOMPSON, Indiv. and as ) Appeal from the Circuit Court

Independent Administrator of the Estate ) of Lake County.

of Trevor Thompson, Deceased, and as )

Independent Administrator of the Estate of )

Amber Thompson, Deceased, )

)

Plaintiff-Appellant, )

)

v. ) No.  98--L--945

)

CHRISTIE GORDON; GRAND AVENUE )

PROPERTIES, INC.; GURNEE MILLS )

(MLP) LIMITED PARTNERSHIP, f/k/a )

Gurnee Mills Limited Partnership; GURNEE )

PROPERTIES ASSOCIATED LIMITED )

PARTNERSHIP; WESTERN )

DEVELOPMENT CORPORATION; )

THE MILLS CORPORATION; )

THE MILLS LIMITED PARTNERSHIP; )

GURNEE MILLS II LLC; and GURNEE     )

MILLS LLC, ) 

) 

Defendants ) 

) The Honorable

(Jack E. Leisch and Associates, Inc.; and ) Stephen E. Walter,

CH2M Hill, Inc., Defendants-Appellees). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE HUTCHINSON delivered the opinion of the court:

This matter comes before the court as an interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  Plaintiff, Corinne Thompson, individually and as independent administrator of the estates of Trevor Thompson and Amber Thompson, both deceased, appealed the trial court's order striking the affidavit of her retained opinion witness, Andrew Ramisch, an engineer not licensed in the State of Illinois.  In an opinion dated May 21, 2004, this court reversed the trial court's order and remanded the case for further proceedings.  See 
Thompson v. Gordon
, 349 Ill. App. 3d 923 (2004).  Defendants then petitioned for leave to appeal to the Illinois Supreme Court.  In a supervisory order of November 24, 2004, the Illinois Supreme Court denied defendants' petition for leave to appeal, but ordered this court to vacate its decision and reconsider its judgment in light of new evidence.  See 
Thompson v. Gordon
, 212 Ill. 2d 555, 555-56 (2004).  In compliance with our supreme court's directive, we now vacate our prior opinion and enter this opinion in its stead.  Now having reconsidered our judgment, we decline to answer the first certified question, we answer the second certified question, and we reverse and remand.

Following a fatal motor vehicle collision in Gurnee that occurred in November 1998, plaintiff initiated a cause of action against defendants, Christie Gordon, Grand Avenue Properties, Inc., Gurnee Mills (MLP) Limited Partnership, f/k/a Gurnee Mills Limited Partnership, Gurnee Properties Associated Limited Partnership, Western Development Corporation, Jack E. Leisch & Associates, Inc. (Leisch), CH2M Hill, Inc. (CH2M), The Mills Corporation, The Mills Limited Partnership, Gurnee Mills II LLC, and Gurnee Mills LLC.  As amended, plaintiff's complaint included allegations of improper roadwork at or near the accident site.  Plaintiff alleged that defendants, specifically Leisch and CH2M, had a duty to exercise reasonable care in designing the roadway near the accident site and that their failure to do so proximately caused plaintiff's injuries and the deaths of Trevor and Amber Thompson.

In November 2002, defendants Leisch and CH2M moved for summary judgment (see 735 ILCS 5/2--1005 (West 2002)).  In response to their motion, plaintiff submitted the affidavit of Andrew Ramisch, plaintiff's expert opinion witness retained pursuant to Supreme Court Rule 213 (177 Ill. 2d R. 213).  According to his curriculum vitae, Ramisch is a civil engineer, licensed in the District of Columbia, with approximately 30 years' experience in the analysis, design, and construction of roadways.  In his affidavit, Ramisch opined that CH2M failed to meet the standard of care in designing the roadway that was at or near the site of the accident.  Thereafter, in January 2003, defendants Leisch and CH2M moved the trial court to strike Ramisch's affidavit, arguing that Ramisch was not qualified to render a professional opinion because he was not licensed as a professional engineer in Illinois pursuant to the Illinois Professional Engineering Practice Act of 1989 (the Engineering Act) (225 ILCS 325/1 
et seq.
 (West 2002)).  Defendants relied on this court's opinion in 
Van Breemen v. Department of Professional Regulation
, 296 Ill. App. 3d 363 (1998), in support of their motion to strike.

The trial court conducted a hearing and, following the arguments of the parties, granted defendants' motion to strike.  In September 2003, plaintiff moved to reconsider the trial court's decision to strike Ramisch's affidavit.  The trial court denied plaintiff's motion to reconsider but granted plaintiff's subsequent motion for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) and certified the following questions:

"Whether the work of an engineer, unlicensed in the State of Illinois, as an Illinois Supreme Court Rule 213(f) retained opinion witness in a litigated matter in the State of Illinois, constitutes the unlicensed practice of professional engineering under the Illinois Professional Engineering Act (225 ILCS 325/1 (1992))"; and

"Whether 
Van Breemen v. Department of Regulation
, 296 Ill. App. 3d 363 *** (2nd Dist. 1998) controls the issue of whether a trial court strikes, on motion, the affidavit of an Illinois Supreme Court Rule 213(f) retained opinion witness, retained in a litigated matter in the State of Illinois, where the opinion witness is not licensed in the State of Illinois."

Plaintiff timely filed an application for leave to appeal, and this court granted the application.  In our prior disposition, we had addressed the questions as the trial court had certified and presented them to us, along with the record as it existed at the time the trial court certified the questions.  See 
Thompson
, 349 Ill. App. 3d 923.  Thereafter, defendants filed in this court a petition for rehearing and a motion to supplement the petition for rehearing.  In their motion to supplement the petition for rehearing, defendants requested that we reconsider the certified questions, given that the Department of Professional Regulation had, on June 21, 2004, issued a rule to show cause against Ramisch.  This court denied defendants' motion to supplement the petition for rehearing and defendants' petition for rehearing.  Defendants petitioned for leave to appeal to our supreme court.

In a supervisory order of November 24, 2004, the Illinois Supreme Court denied defendants' petition for leave to appeal, but ordered this court to vacate its decision and reconsider its judgment in light of new evidence.  See 
Thompson v. Gordon
, 212 Ill. 2d at 555-56.  The supreme court has directed us to permit defendants to file a certified copy of the Department's September 22, 2004, cease and desist order against Ramisch.  The supreme court has directed us to reconsider our judgment in light of this cease and desist order, and any other relevant order or argument we permit the parties to file, to determine whether a different result or different reasoning is warranted.  The supreme court has also directed us to reconsider whether we should have exercised our discretion to go beyond the certified questions posed by the trial court and determine the propriety of the order striking Ramisch's affidavit, in light of the cease and desist order, and to consider whether the issue is now moot.  
Thompson
, 212 Ill. 2d at 555-56.  Pursuant to our supreme court's directive, we allow defendants to file the Department's September 22, 2004, cease and desist order.  The parties have also filed supplemental briefs, and we will now proceed accordingly.

This court's examination in an interlocutory appeal is strictly limited to the questions certified by the trial court and, as with all questions of law, is a 
de novo
 review.  
In re Consolidated Objections to Tax Levies of School District No. 205
, 306 Ill. App. 3d 1104, 1107 (1999), citing 
Lanxon v. Magnus
, 296 Ill. App. 3d 377, 379 (1998).  Thus, our task is to answer the certified questions rather than to rule on the propriety of any underlying order.  
P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.
, 345 Ill. App. 3d 992, 998 (2004), citing 
Danner v. Norfolk & Western Ry. Co.
, 271 Ill. App. 3d 598, 601 (1995).  In the interests of judicial economy and reaching an equitable result, however, a reviewing court may go beyond the certified questions and consider the appropriateness of the order giving rise to the appeal.  
P.J.'s Concrete Pumping Service
, 345 Ill. App. 3d at 998-99, citing 
Bright v. Dicke
, 166 Ill. 2d 204, 208 (1995).

In the present case, the first question we are called upon to consider is whether the work of an engineer who is retained as a Rule 213(f) opinion witness constitutes the unlicensed practice of professional engineering under the Engineering Act when the engineer is unlicensed in Illinois.  We are unable to answer this first question because the initial determination of what constitutes the unlicensed practice of engineering in Illinois is relegated, not to the appellate court, but to the Department of Professional Regulation (the Department).  See 20 ILCS 2105/2105--1 
et seq.
 (West 2002); 225 ILCS 325/1 
et seq.
 (West 2002).  In section 5--15 of the Civil Administrative Code of Illinois (20 ILCS 5/5--15 (West 2002)), the legislature created the Department as a department of state government.  In article 2105 of the Civil Administrative Code of Illinois (the Department of Professional Regulation Law) (20 ILCS 2105/2105--1 
et seq.
 (West 2002)), the legislature set out the powers and duties of the Department.  In section 2105--10 of the Department of Professional Regulation Law, the legislature declared:

"The practice of the regulated professions *** is hereby declared to affect the public health, safety, and welfare of the People of this State and in the public interest is subject to regulation and control by the Department of Professional Regulation.

It is further declared to be a matter of public interest and concern that standards of competency and stringent penalties for those who violate the public trust be established to protect the public from unauthorized or unqualified persons representing one of the regulated professions ***."  20 ILCS 2105/2105--10 (West 2002).

The powers and duties of the Department include passing upon the qualifications of applicants for licenses; conducting hearings or taking other disciplinary action as authorized in any licensing act administered by the Department with regard to licenses of persons exercising the respective professions; and formulating rules and regulations for the enforcement of any act administered by the Department.  See 20 ILCS 2105/2105--15 (West 2002).  In section 2105--75 of the Department of Professional Regulation Law (20 ILCS 2105/2105--75 (West 2002)), the legislature specifically established "design professionals dedicated employees," who "shall be devoted exclusively to the administration and enforcement" of, among others, the Engineering Act (225 ILCS 325/1 
et seq.
 (West 2002)).

Accordingly, the Engineering Act is a legislative enactment created under the aegises of the Department of Professional Regulation Law and the Civil Administrative Code of Illinois.  See 20 ILCS 5/5--15 (West 2002); 20 ILCS 2105/2105--10 (West 2002).  The Engineering Act provides for the comprehensive regulation of the practice of professional engineering and sets forth, 
inter alia
, definitions and examples of the practice of professional engineering; educational qualifications for professional engineers; authorization for an agency charged with administering the provisions of the Engineering Act; provisions for the examination of qualified applicants; and provisions for discipline and punishment.  225 ILCS 325/1 
et seq.
 (West 2002); 
Miller v. Department of Professional Regulation
, 276 Ill. App. 3d 133, 137 (1995).  To be more specific, section 5 of the Engineering Act provides in relevant part:

"Subject to the provisions of this Act, the Department [of Professional Regulation] shall exercise the following functions, powers and duties:

(a) To pass upon the qualifications and conduct examinations of applicants for licensure ***.

* * *

(d) To conduct investigations and hearings regarding violations of this Act and take disciplinary or other actions as provided in this Act as a result of the proceedings.

***

(f) To promulgate rules required for the administration of this Act, including rules of professional conduct."  225 ILCS 325/5 (West 2002).

Section 24(a) of the Engineering Act provides that the "Department shall adopt rules setting standards of professional conduct and establish appropriate penalty for the breach of such rules."  225 ILCS 325/24(a) (West 2002).  Following an administrative decision rendered in a particular case affecting the legal rights, duties, or privileges of a party, this court may entertain an appeal brought pursuant to the Administrative Review Law (735 ILCS 5/3--101 
et seq.
 (West 2002)).  225 ILCS 325/37 (West 2002).

In the present case, defendants Leisch and CH2M moved the trial court to strike Ramisch's affidavit, based on his lack of an Illinois engineering license.  The first certified question asks whether the work of an engineer who is retained as an opinion witness constitutes the unlicensed practice of professional engineering under the Engineering Act when the engineer is unlicensed in Illinois.  On our review of the Civil Administrative Code of Illinois, the Department of Professional Regulation Law, and the Engineering Act, this reviewing court does not act in an administrative capacity to make such determinations.  Rather, we believe it is within the province of the Department to determine what constitutes the unlicensed practice of professional engineering under the Engineering Act.  Despite the Department's cease and desist order, wherein the Department found that Ramisch has engaged in the unlicensed practice of professional engineering under the Engineering Act, our jurisdiction to consider this question in the context of this interlocutory appeal has not been triggered, as our jurisdiction can be effected only in accordance with the Administrative Review Law (see 735 ILCS 5/3--101 et 
seq.
 (West 2002)).  Accordingly, we decline to answer the first certified question.  See 
Dowd & Dowd, Ltd. v. Gleason
, 181 Ill. 2d 460, 470 (1998) (declining to answer a certified question given the provisional nature of the inquiry, the importance of the issue involved, and the absence of a fully developed factual record).

Defendants assert, nevertheless, that this court does have the power to determine what constitutes the unlicensed practice of engineering, and they cite 
People v. Johnson
, 68 Ill. 2d 441 (1977), in support of their assertion.  In their brief, defendants state that, in 
Johnson
, "the Illinois Supreme Court affirmed the trial court's ruling that the defendant had engaged in the plumbing trade without a license."  Even a cursory reading of 
Johnson
 would not reflect that which defendants assert to have occurred.  In 
Johnson
, the defendant indeed was charged with the offense of engaging in the plumbing trade without a license.  
Johnson
, 68 Ill. 2d at 445.  However, the trial court granted the defendant's motion to dismiss, holding that the statutory prerequisites for the taking of the licensing examination were unconstitutional.  
Johnson
, 68 Ill. 2d at 445-46.  On appeal, the Illinois Supreme Court considered the validity of the statutory provisions and concluded that the regulations in force at the time of the offense with which the defendant was charged were invalid.  
Johnson
, 68 Ill. 2d at 450.  The 
Johnson
 court held that the charge against the defendant be dismissed, and it thus affirmed the trial court's judgment.  
Johnson
, 68 Ill. 2d at 450-51.  Our reading of 
Johnson
 does not alter our decision not to answer the first certified question.

The second certified question asks whether 
Van Breemen
, 296 Ill. App. 3d 363, controls the issue of whether a trial court strikes, on motion, the affidavit of a Rule 213(f) retained opinion witness who is not licensed in the State of Illinois.  In 
Van Breemen
, the Department of Professional Regulation solicited from the plaintiff a brochure that advertised his services as an expert witness.  The plaintiff responded, detailing his education and work experience, which included engineering design, product development, failure analysis, and investigative procedure, and accentuating his forensic work and industrial-failure investigations.  
Van Breemen
, 296 Ill. App. 3d at 366.  Thereafter, the Department initiated a rule to show cause against the plaintiff to cease and desist from the unlicensed practice of professional engineering.  
Van Breemen
, 296 Ill. App. 3d at 364.  Following the receipt of the plaintiff's answer to the rule, the Department found that the plaintiff had failed to answer the rule to its satisfaction, and it concluded that the plaintiff was engaged in the unlicensed practice of professional engineering.  
Van Breemen
, 296 Ill. App. 3d at 364-65.  The Department ordered the plaintiff to cease and desist from the unlicensed practice of professional engineering.  
Van Breemen
, 296 Ill. App. 3d at 365.  The plaintiff then brought a complaint for judicial review of the administrative decision, and the trial court affirmed the Department's cease and desist order.  
Van Breemen
, 296 Ill. App. 3d at 365.  In affirming the trial court's judgment, we reviewed, 
inter alia
, the sufficiency of the Department's findings and the validity of its conclusions.

The 
Van Breemen
 decision has nothing to do with the issue of whether a trial court should strike the affidavit of a retained opinion witness.  The 
Van Breemen
 decision did not reflect on the plaintiff's competency as an engineer.  It had nothing to do with his qualifications as a retained expert witness.  The issue of whether the plaintiff in 
Van Breemen
 was competent to act as an expert was not even before the reviewing court.  Rather, 
Van Breemen
 was a judicial review, following the Department's issuance of a cease and desist order, of the Department's findings and decision that the plaintiff had violated provisions of the Engineering Act by holding himself out as a professional engineer and offering  to perform professional engineering services, especially forensic engineering.  See 
Van Breemen
, 296 Ill. App. 3d at 364-66.

The present case, however, comes to this court, not on judicial review of an administrative decision, but, rather, on judicial review of a trial court's ruling to strike the affidavit of an expert opinion witness in a civil action.  The Department's cease and desist order does not alter our analysis or decision.  As we stated, our jurisdiction to review the merits of the Department's cease and desist order against Ramisch has not yet been triggered, as our jurisdiction to review the Department's findings and order can be effected only in accordance with the Administrative Review Law (see 735 ILCS 5/3--101 et 
seq.
 (West 2002)), and we decline to do so now in contravention thereof.  One who seeks judicial review of a trial court's decision in a civil case bears the burden of setting the appellate process in motion.  See, 
e.g.
, 155 Ill. 2d Rs. 301, 303, 304, 308.  In the present case, plaintiff is seeking judicial review of the trial court's decision to grant defendants' motion to strike Ramisch's affidavit.  By seeking and obtaining a permissive interlocutory appeal with this court, plaintiff has thus set the appellate process in motion.  See 155 Ill. 2d R. 308.  One who objects before an administrative agency, however,  is not setting the judicial process in motion but, rather, is trying to influence the course of action that is already in motion.  Here, defendants have presented to this court the Department's cease and desist order, which contains the Department's findings and ruminations on the proceedings at issue.  Defendants claim that the Department's cease and desist order should, therefore, control the trial court's decision as well as this court's.  Defendants' intimation that an administrative body's decision is an adequate substitute for judicial review ignores the functional difference between these two types of procedural rights.

The Administrative Review Law was enacted to eliminate conflicting and inadequate common-law and statutory remedies for the judicial review of administrative decisions and to substitute a single, uniform, and comprehensive remedy.  
Rodriguez v. Du Page County Sheriff's Merit Comm'n
, 328 Ill. App. 3d 899 (2002), citing 
Mueller v. Board of Fire & Police Commissioners
, 267 Ill. App. 3d 726, 733 (1994).  " 'The purpose of administrative review is "to make certain the agency has acted within its judicial bounds defined by law, to guard those statutory and constitutional rights guaranteed to one subject to administrative action, and to ascertain whether the record supports the order issued." ' [Citations.] "  
City of Markham v. State & Municipal Teamsters, Chauffeurs & Helpers, Local 726
, 299 Ill. App. 3d 615, 619 (1998).  As we stated, following an administrative decision rendered in a particular case affecting the legal rights, duties, or privileges of a party, this court may entertain an appeal brought pursuant to the Administrative Review Law (735 ILCS 5/3--101 
et seq.
 (West 2002)).  225 ILCS 325/37 (West 2002).  Except in the limited area of administrative review, however, jurisdiction in the courts is conferred by our constitution (Ill. Const. 1970, art. VI, §9).  
Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.
, 199 Ill. 2d 325, 336 (2002).  The function of the judicial process, and more specifically here, judicial review, is to "dig beneath words and concepts, and, through logic, history, custom, utility, and the standards of right conduct, or one or more of such forces, determine the nature and substance of litigation and the shape and progress of the law."  
People ex rel. Mayfield v. City of Springfield
, 16 Ill. 2d 609, 613 (1959).  In a case involving an agency's interpretation of a statute that the agency is charged with administering, the agency's interpretation is considered relevant, but not binding on the court.  
Village of Stickney v. Board of Trustees of the Police Pension Fund
, 347 Ill. App. 3d 845, 848 (2004), citing 
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254 (1995).

With these principles in mind, we recognize and have reviewed the Department's cease and desist order in addition to this court's 
Van Breemen
 decision.  As we stated, the present case comes to this court on judicial review of a trial court's ruling in a civil action and not on administrative review.  Further, the Department's cease and desist order is relevant evidence but not binding on the trial court in considering whether to allow Ramisch to testify as an expert witness, or on this court in determining whether the trial court properly ruled on defendants' motion to strike.  
Cf.
 
Village of Stickney
, 347 Ill. App. 3d at 848.  On our review of the law and evidence presented, we decline to ascribe a binding philosophy on the trial court in determining whether it should strike an affidavit of a proposed expert witness in a civil case.  Accordingly, we determine that the 
Van Breemen
 case does not control the issue of whether a trial court must strike, on motion, the affidavit of a Rule 213(f) retained opinion witness, where the opinion witness is not licensed in the State of Illinois.  We therefore answer the second certified question, as it is posed here, in the negative.

Defendants point out that, with the Department's cease and desist order barring Ramisch from testifying in effect, our decision here allowing Ramisch to testify would subject him to civil penalties or criminal punishment for violating the Engineering Act.  We note that, in the Department's cease and desist order, the Department "encourages" this court and the trial court "to not ignore the licensing requirement ***, particularly where such conduct by the witness could subject the witness to criminal prosecution and civil penalties."  Defendants argue that, by allowing Ramisch to testify, the trial court--and by implication this court--would be engaging in "aiding and abetting the unlicensed practice of professional engineering."

We no more encourage or condone practicing professionals' foisting themselves upon a tribunal and committing a criminal act by testifying than do we encourage or condone witnesses' perjuring themselves on the witness stand or incriminating themselves.  Yet, it happens.  See 
People v. Harrod
, 140 Ill. App. 3d 96 (1986) (finding evidence sufficient in a prosecution for perjury when the defendant, an attorney, made a false statement under oath before the attorney disciplinary commission in regard to circumstances surrounding the execution of a client's will); 
People v. Tenner
, 175 Ill. 2d 372 (1997) (jury finding the defendant guilty of two counts of first-degree murder, one count of attempted first-degree murder, four counts of aggravated unlawful restraint, and one count of armed violence, following the defendant's testimony at trial where he testified that he prepared the ropes used to bind his victims and that he fired the shots that killed two of the victims and injured a third).

This case concerns the authority of a trial court to determine whether, to what extent, and under what circumstances it should allow an expert to testify.  In 
Snelson v. Kamm
, 204 Ill. 2d 1 (2003), our supreme court discussed the applicable law regarding expert witnesses, stating:

"The decision of whether to admit expert testimony is within the sound discretion of the trial court [citation], and a ruling will not be reversed absent an abuse of that discretion [citation].  Expert testimony is admissible if the proffered expert is qualified by knowledge, skill, experience, training, or education, and the testimony will assist the trier of fact in understanding the evidence.  [Citation.]"  
Snelson
, 204 Ill. 2d at 24.

Expert testimony therefore is proper if the evidence offers " 'knowledge and application of principles of science beyond the ken of the average juror.' "  
Zavala v. Powermatic, Inc.
, 167 Ill. 2d 542, 546 (1995), quoting 
Plank v. Holman
, 46 Ill. 2d 465, 471 (1970).

In the present case, defendants Leisch and CH2M moved the trial court to strike Ramisch's affidavit, arguing that Ramisch was not qualified to render a professional opinion because he was not licensed as a professional engineer pursuant to the Engineering Act.  The record reflects that Ramisch is a civil engineer, licensed in the District of Columbia, with approximately 30 years' experience in the analysis, design, and construction of roadways.  In its cease and desist order, the Department stated:  "Courts have held that a threshold requirement for an expert is licensure," and "Licensure is a threshold requirement."  The Department has cited no authority for this proposition, and the authority we have found does not support the Department's statements.

One case that specifically discusses licensure with respect to testifying as an expert witness is 
People v. West
, 264 Ill. App. 3d 176 (1994).  In 
West
, the defendant owned three buildings and operated a business out of them.  A fire broke out, and the defendant filed a claim against his insurance carrier, State Farm, for the loss.  State Farm investigated and determined that the cause of the fire was arson.  The State then charged the defendant with five counts of arson and one count of aggravated arson.  The State's expert witness was State Farm's investigator, who was from Indiana and did not hold an Illinois fire investigator's license (225 ILCS 445/2(h)(4) (West 1992)).  
West
, 264 Ill. App. 3d at 177-78.  The defendant objected to State Farm's investigator testifying as an expert witness for the State because he was not licensed, and the trial court ruled that a person need not be licensed to qualify as an expert.  
West
, 264 Ill. App. 3d at 178.  On appeal, the Fifth District Appellate Court "agree[d] with defendant with some exceptions" and reversed.  
West
, 264 Ill. App. 3d at 184.

At first blush, this seems like authority supporting defendants' position.  However, we note that 
West
 was a criminal case brought by the State, and as such, liberty interests of the defendant were clearly at stake.  The appellate court seemed to take issue with the State, not because of its decision to employ an unlicensed fire investigator as its expert witness, but because of its decision to hire State Farm's investigator as its expert witness.  The appellate court reviewed the legislation, which stated, 
inter alia
, that a person practicing as a private detective in Illinois without a license was guilty of a Class 4 felony.  
West
, 264 Ill. App. 3d at 184.  The court noted that "[t]here may be rare occasions when the State may legitimately rely upon or allow a witness to commit a felony in order to obtain evidence against a defendant, but there was no need to do so in this case where the State Fire Marshall, firemen, police, and licensed 'private detectives' were available."  
West
, 264 Ill. App. 3d at 185.

The 
West
 court specifically stated:

"The State argues that the witness was unbiased, but we find that, under the circumstances here, the witness had every motivation to find that the fire *** was an arson fire. The witness worked for a company which was hired by State Farm to investigate the fire. It was entirely in State Farm's best interest that the fire be deemed arson, since this would relieve it of paying a large claim loss. Further, to have defendant convicted of the arson would bolster State Farm's denial of the claim in a civil lawsuit, should one be brought. One could conclude that State Farm would be very happy with the work of Barker and Herbert, if it did not have to pay the fire loss. We are not suggesting bad motives by Walker or State Farm but are merely pointing out that Walker is no 
deus ex machina
, whose believability should not be scrutinized.

We note that by our holding we are not prohibiting witnesses from testifying as experts if the experts were not engaged as 'private detectives' and simply were conducting tests within their field of expertise that may be used in trials.  
We see nothing to indicate that the legislature intended for all chemists, engineers, physicists, and architects, or any other experts that do lab work on items that may have been involved in fires, accidents, or injuries to real or personal property, to be licensed 'private detectives' before they would be allowed to examine, test, and testify about the design, structure, and composition of the items.

The problem in the instant case is that the expert was actually practicing or conducting the primary investigation. The licensing provision of the statute enables the State to maintain some control over who practices, how an investigation is conducted, and what the minimum requirements should be if the investigation is conducted in Illinois."  (Emphasis added.)  
West
, 264 Ill. App. 3d at 186.

From our reading of the 
West
 opinion, given that it was a criminal case where an individual's liberty was at stake and the evidence was "extremely closely balanced," (
West
, 264 Ill. App. 3d at 188) the State should have engaged the services of an independent and unbiased Illinois fire investigator, perhaps even licensed, rather than a fire investigator who was so clearly intertwined in conflicts of interest with the defendant.  Unlike 
West
, the instant case is a civil case with each side procuring its own expert witnesses, and the State is not a party.  Further, given the 
West
 court's disclaimer regarding other situations, we believe our stance is in conformity with the 
West
 decision.

In accordance with 
West
 and the other aforementioned authorities, we believe that licensure with the State of Illinois pursuant to the Engineering Act is not required to render an expert opinion; rather, the witness must be deemed to be an "expert," or have the experience and qualifications to assist the trier of fact.  See 
Snelson
, 204 Ill. 2d at 24; 
Zavala
, 167 Ill. 2d at 546.  The lack of an Illinois professional engineering license goes to the weight of Ramisch's testimony, not his competency.  See 
Buford v. Chicago Housing Authority
, 131 Ill. App. 3d 235, 243-44 (1985) (allowing a witness to testify as an expert concerning elevator safety despite the witness's lack of knowledge or experience with elevator design, maintenance, repair, installation, applicable safety codes, union requirements respecting elevator mechanics, or day-to-day practices of elevator mechanics); see also 
Ralston v. Plogger
, 132 Ill. App. 3d 90, 98-99 (1985).

We also disagree with defendants' claim that our decision would create an "irreconcilable anomaly."  We recognize that the legislature sets out what constitutes the practice of engineering in the statutes regarding the regulation of professions.  See 225 ILCS 325/1 et 
seq.
 (West 2002).  We also recognize our supreme court's rules and decisions regarding the qualifications of an expert witness and an expert's testimony.  See, 
e.g.
, Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002.  Our domain should lie in the rules and case law providing for experts.  The trial court's gatekeeping function is to determine whether an individual is qualified to be an expert, not merely by determining whether that individual took an exam and can display a piece of paper showing a passing mark, but by reviewing the individual's credentials, experience, and knowledge of the subject matter.  See 
Snelson
, 204 Ill. 2d at 24.  The trial court's function is also to determine whether that expert's testimony would assist the trier of fact.  
Snelson
, 204 Ill. 2d at 24.  Our function is to determine whether the trial court abused its discretion.  See 
Snelson
, 204 Ill. 2d at 24.

Supreme Court Rule 213 identifies and defines "lay witnesses," "independent expert witnesses," and "controlled expert witnesses."  See Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213(f)(1), (2), (3), eff. July 1, 2002.  If our supreme court wanted to condition trial testimony of independent and controlled expert witnesses on the holding of professional state licenses, it could have done so easily by including that in the definition.  Similarly, if the legislature wanted to condition any testimony by a professional on whether the individual holds a state license, it could enact a statute setting standards for such expert witnesses, as it has done in cases in which the standard of care applicable to a medical professional is at issue.  See 735 ILCS 5/8--2501 (West 

2002).  In section 8--2501 of the Code of Civil Procedure, the legislature specifically set out standards, one of which is licensure, which a trial court applies to determine whether a witness qualifies as an expert witness and can testify on the issue of the appropriate standard of care in a medical malpractice case.  735 ILCS 5/8--2501 (West 2002).  Because our supreme court has not included licensure as a condition for an expert's testimony and because our legislature has not done so either, we decline to impose such a requirement here.

As we previously stated, in the interests of judicial economy and reaching an equitable result, a reviewing court may go beyond the certified questions and consider the appropriateness of the order giving rise to the appeal.  
P.J.'s Concrete Pumping Service
, 345 Ill. App. 3d at 998-99, citing 
Bright
, 166 Ill. 2d at 208.  In its supervisory order, our supreme court has directed us to reconsider, in light of the Department's cease and desist order, the trial court's order granting defendants' motion to strike Ramisch's affidavit and whether the issue is now moot.  Given our resolution of the certified questions, the issue is not moot.  Therefore, pursuant to our supreme court's directive, we will consider the propriety of the trial court's underlying order.

The decision of whether to admit expert testimony is within the sound discretion of the trial court, and a ruling will not be reversed absent an abuse of that discretion.  
Snelson
, 204 Ill. 2d at 24; 
Compton v. Ubilluz
, 353 Ill. App. 3d 863, 866 (2004).  If the court's decision rests on an error of law, however, then it is clear that an abuse of discretion has occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the law.  See 
Cooter & Gell v. Hartmarx Corp.
, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 381-82, 110 S. Ct. 2447, 2461 (1990); see also 
Save the Prairie Society v. Greene Development Group, Inc.
, 323 Ill. App. 3d 862, 867 (2001) (stating that a trial court abuses its discretion if it ignores recognized legal principles).  Here, the order giving rise to the appeal arose from the trial court's decision to grant defendants' motion to strike the affidavit of Ramisch because he lacked an Illinois professional engineering license.  The record reflects no indication that the trial court considered, in addition to Ramisch's lack of an Illinois license to practice engineering, whether he was qualified based on his knowledge, skill, experience, training, or education, or whether the proffered testimony would assist the trial court in understanding the evidence.  See 
Snelson
, 204 Ill. 2d at 24.  The trial court's decision to strike Ramisch's affidavit on the basis that he lacked an Illinois license reflects that the trial court failed to recognize the legal principles involved in determining whether Ramisch's testimony would assist the trier of fact (see 
Snelson
, 204 Ill. 2d at 24) or offer " 'knowledge and application of principles of science beyond the ken of the average juror.' "  
Zavala v. Powermatic, Inc.
, 167 Ill. 2d 542, 546 (1995), quoting 
Plank v. Holman
, 46 Ill. 2d 465, 471 (1970).  We, therefore, hold that the trial court abused its discretion when it granted defendants' motion and struck Ramisch's affidavit on the basis that he lacked an Illinois license to practice professional engineering.

In summary, we decline to answer the first certified question, and we answer the second certified question in the negative.  Accordingly, the order of the circuit court of Lake County striking Ramisch's affidavit is reversed and the cause is remanded for further proceedings.

First certified question not answered; second certified question answered; order reversed and cause remanded.

BYRNE and GILLERAN JOHNSON, JJ., concur.