2026 IL App (1st) 241488-U

No. 1-24-1488

Order filed March 17, 2026

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOSEPH MORGAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 23CH7073 |
| | ) | |
| SILVER FINANCIAL CAPITAL, INC., | ) | Honorable |
| | ) | Allen Price Walker, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court's denial of motion to vacate arbitration award affirmed where the arbitrator did not exceed his authority.

¶ 2    Plaintiff, Joseph Morgan, appeals the circuit court's denial of his motion to vacate an arbitrator's decision in favor of defendant, Silver Financial Capital, Inc. (Silver).

¶ 3    The record shows that Silver, a Delaware corporation with its principal place of business in Utah, is a consumer lender offering loans online through its website. In April 2022, Morgan, an

Illinois resident, completed an application on Silver's website for a $1000 short term consumer loan. Silver's website contained the following message:

> "We are registered with Utah's Department of Financial Institution to provide Consumer Credit. If you submit this application via the internet to us, we will receive and process it the same as if you submitted it to us in person thereby making Utah the place of negotiation, execution and performance of all applications and/or agreement. If we approve your application, the funds will be disbursed from our account in Utah. Utah law governing consumer loan agreements may differ from the laws of the state where you reside. Applicant is responsible for complying with all statutory obligations regarding obtaining loans by internet that may exist in their state of residence. This service may or may not be available in your particular state."

¶ 4    The loan agreement entered by the parties further provided that Silver would finance a $1000 loan to Morgan, who would make biweekly payments to Silver over the course of approximately six months. The loan agreement further provided that the total finance charge for the loan was $1426, and the annual percentage rate (APR) for the loan was 482.6197%. The agreement also provided that it was "deemed to be made in the State of Utah," that it was "governed by the laws of the state of Utah" when funded. The loan agreement contained an arbitration agreement, reiterating that "the law of the State of Utah will govern this Agreement," and that "any dispute arising out of" the loan agreement would be subject to an arbitration agreement, governed by the Federal Arbitration Act (FAA). Morgan agreed that "any claims that directly or indirectly arise from [the] Loan Agreement" would be resolved "in binding and mandatory arbitration."

¶ 5     On June 23, 2022, two months after completing the loan application, Morgan filed a demand for arbitration, acknowledging that the loan agreement entered by the parties contained an arbitration clause and seeking to "submit the following dispute to final and binding arbitration." Morgan alleged that the loan agreement between him and Silver was "predatory and unlawful" and that the interest rate charged exceeded the amount allowed by Illinois law. Morgan sought a declaratory award that the loan was void, damages pursuant to the Illinois Interest Act, (815 ILCS 205/6 (West 2022)), and damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, (815 ILCS 123/15-1-1 et seq. (West 2022)).

¶ 6     On April 11, 2023, Silver filed a motion to dismiss Morgan's claims. Silver alleged that the executed loan agreement contained "multiple recitations that Utah law applies to the Loan Agreement and any claims related to it." Silver maintained that the parties' choice of law is given effect unless it would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state. Silver argued that enforcing the contract's Utah's choice of law provision did not offend Illinois public policy because he could still seek redress of claims in arbitration under Utah law, and that Illinois did not have a materially greater interest in the litigation because

> "Silver is licensed by the state of Utah and is subject to the regulation of and audit by the Utah Department of Financial Institutions–as the Loan Agreement expressly makes clear. [Morgan] knowingly reached out to a Utah lender to obtain his loan, and his Loan Agreement clearly and repeatedly specifies that Utah law appl[i]es."

¶ 7     Accordingly, Silver argued that the parties' choice of law controlled, that the arbitrator was required to apply Utah substantive law to Morgan's claims, and that Morgan's claims should be dismissed as they were based solely on Illinois law.

3

¶ 8    Morgan responded to Silver's motion to dismiss on May 3, 2023. Among other things, Morgan asserted that the Predatory Loan Prevention Act applied by its terms to "any person or entity that offers or makes a loan to a consumer in Illinois" and that the Act "expressly negated the ability of consumers to waive the protections" of the Act. Accordingly, Morgan maintained that "a choice of law clause that has the effect of making the Act inapplicable is both a prohibited waiver or evasion of the Act and invalid as contrary to public policy." Morgan cited the United States Supreme Court case of *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022), for the statement that an "arbitration agreement *** does not alter or abridge substantive rights," and contended that there was "no basis for disregarding controlling Illinois statutory law."

¶ 9    The arbitrator heard oral argument on May 31, 2023, and entered an order granting Silver's motion to dismiss on June 30, 2023. The arbitrator explained that there was no dispute that the subject loan agreement contained an arbitration clause which gave the arbitrator authority to decide the matter. The arbitrator concluded that the choice of law provision in the contract applied to govern Morgan's claims, that no public policy exception existed to modify that choice of law, and, accordingly, Illinois law did not apply. The arbitrator specifically found that *Viking River Cruises, Inc.*, 596 U.S. 639 (2022) was "not on point" because it "dealt with federal pre-emption of a California state law." The arbitrator noted that his authority arose,

> "not from state or federal law, but from the parties in their arbitration agreement. The arbitrator is bound by their choice of law. The arbitrator finds that the terms of the arbitration agreement control and he must apply Utah law. Therefore, because

[Morgan]'s Statement of Claim is based on Illinois law, [Silver]'s motion to dismiss is granted."[1]

¶ 10    On August 2, 2023, Morgan filed a motion to vacate the arbitration award in the circuit court.  Morgan alleged that, under *Viking River Cruises, Inc.*, 596 U.S. 639, an arbitration clause does not deprive a plaintiff of any "substantive statutory rights." Morgan asserted that applying Utah law effectively waived Morgan's statutory rights under the Predatory Loan Prevention Act, "which cannot be enforced under Illinois law and the FAA." Morgan contended that the "arbitrator exceeded his authority by refusing to follow" *Viking River Cruises, Inc.* Morgan also contended that an arbitration award could be vacated if "enforcement of the award would violate public policy." Morgan stated that it would violate Illinois public policy to "allow a lender to avoid the prohibition of the [Predatory Loan Prevention Act] by inserting in the form contracts signed by necessitous borrowers an arbitration clause and a choice of law clause selecting the law of a state that does not cap interest rates."

¶ 11    Silver responded to Morgan's motion to vacate the arbitration award on May 29, 2024. Silver asserted that the arbitrator correctly concluded that his power stemmed solely from the parties' arbitration agreement which provided that Utah law governed any disputes, and that the "public policy exception" to vacate an arbitration award was limited to cases involving collective bargaining agreements.

¶ 12    On July 19, 2024, the circuit court entered an order denying Morgan's motion to vacate the arbitration award. The court agreed with the arbitrator that he "gets his authority, not from state or federal law, but from the parties in their arbitration agreement," and found "no basis to apply the

---

[1] Thereafter, Silver filed a motion for award of arbitration fees. The arbitrator entered a final order on October 23, 2023, denying Silver's motion.

public policy exception to arbitration agreement." The court further found that the "arbitrator was bound by the choice of law that was stated in the arbitration agreement," and that "Utah law governs." Nonetheless, the circuit court noted that it could only vacate an arbitration award where "the arbitrator exceeds their powers," and "even if the arbitrator incorrectly applied the law, his alleged error does not rise to the level of exceeding his powers."

¶ 13    Morgan filed a timely notice of appeal from that order.  In this court Morgan maintains that the arbitrator's decision must be vacated because his rights under the Predatory Loan Prevention Act are "non-waivable," and the United States Supreme Court decision of *Viking River Cruises, Inc.,* 596 U.S. 639 (2022) provides that "an arbitration agreement that purports to waive non-waivable statutory rights *** is invalid and unenforceable." Morgan also contends that the arbitrator "exceeded his authority" by issuing an award that "declares valid and enforceable a loan declared void by the Predatory Loan Prevention Act," by "refusing to follow" the *Viking River Cruises, Inc.* decision, and by "issuing an award that violates a party's non-waivable statutory rights." Finally, Morgan contends that the arbitration award violates public policy, and should be vacated on that basis.

¶ 14    It is well established that judicial review of an arbitrator's decision is extremely limited. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254 (1988). The award must be construed as valid whenever possible. *Id.* " 'Limited judicial review fosters the long-accepted and encouraged principle that an arbitration award should be the end, not the beginning of litigation.' " *Yorulmazoglu v. Lake Forest Hospital,* 359 Ill. App. 3d 554, 564 (2005), quoting *Perkins Restaurants Operating Co. v. Van Den Bergh Foods, Co.,* 276 Ill. App. 3d 305, 309 (1995). " 'When parties agree to submit a dispute to arbitration for a binding and nonappealable decision, they bargain for finality.' " *First Health Group Corp. v. Ruddick*, 393 Ill.

App. 3d 40, 48 (2009), quoting *Yorulmazoglu,* 359 Ill. App. 3d at 564. "The point of arbitration is to provide a quick and economical alternative to litigation, not to add yet another round before entering the district and appellate courts." *First Health Group Corp.*, 393 Ill. App. 3d at 48.

¶ 15     The parties agree that the Federal Arbitration Act governs this matter, as set out in the parties' agreement.  Under the FAA, a reviewing court can vacate or modify an arbitration award in the following limited circumstances:

> "(1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10 (West 2022).

¶ 16     Here, Morgan invokes only the fourth ground as the basis to vacate the arbitration award, asserting that the arbitrator exceeded his power.

¶ 17     Arbitrators "derive their "powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution.' " *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019), quoting *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U. S. 662, 682 (2010); see also *Village of Posen v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 37. "On judicial review, there is a presumption the arbitrator did not exceed his

authority." *Decatur Police Benevolent and Protective Association Labor Committee v. City of Decatur*, 2012 IL App (4th) 110764, ¶ 21. An arbitrator exceeds his authority when he decides matters that were not submitted to him for resolution. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 419 (1979) (*District No. 508*). Further, the scope of an arbitrator's power is dependent upon what the parties agreed to submit to arbitration. *Id.* Because the parties agreed to have disputes settled through arbitration, the court may not overrule an award simply because it would interpret the contract differently. *Everen Securities, Inc. v. A.G. Edwards and Sons, Inc.*, 308 Ill. App. 3d 268, 273 (1999).

¶ 18    Morgan asserts that he has been deprived of substantive Illinois consumer protection rights under the Predatory Loan Prevention Act, relying on *Viking River Cruises, Inc.* for the proposition that "[a]n arbitration agreement *** does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Id.* at 653. Silver agrees that the agreement to arbitrate does not affect Morgan's substantive rights, but asserts that no substantive right to which Morgan was entitled has been altered or abridged, because Morgan was never entitled to the application of Illinois law when he agreed that the loan agreement was governed by Utah law.  We agree with Silver.

¶ 19    In arbitration, Morgan had the same substantive rights that he would have had otherwise, including the right to seek redress under the laws of Utah, which he agreed governed the parties' contract. Although Morgan could not raise claims based only on Illinois law, he is not without recourse under the law he agreed to. Morgan contends that Utah law does not limit interest rates, citing Utah Code Ann. § 70C-2-101—"parties to a consumer credit agreement may contract for payment by the debtor of any finance charge and other charges and fees." He omits, however, the

introductory portion of that sentence—"Except where restricted or otherwise covered by provisions of this title." In particular, Utah law provides that a court may refuse to enforce an unconscionable contract in whole, or in part by removing the unconscionable clause. Utah Code Ann. § 70C–7–106(1) (2009); see also *Knight Adjustment Bureau v. Lewis*, 228 P.3d 754, 756 (Utah 2010); *Sosa v. Paulos,* 924 P.2d 357, 359 (Utah 1996). And where a Utah court finds the consumer credit agreement to be unconscionable, the court may impose a penalty between $100 and $5000, plus attorney fees. Utah Code Ann. § 70C–7–106(4) (2009). Having agreed that Utah law, including the above provisions, governs any disputes under the loan agreement, we agree with the arbitrator that Morgan cannot raise claims solely based on Illinois law.

¶ 20    We also find *Viking River Cruises, Inc.*, 596 U.S. 639, and much of the other authority invoked by Morgan, distinguishable because the posture of this case is very different. In those cases, the validity of an arbitration agreement, and the arbitrability of the dispute, was in question. Here, by contrast, Morgan filed a demand for arbitration, seeking to submit his dispute "to binding arbitration."

¶ 21    For example, in *Viking River Cruises, Inc.*, 596 U.S. 639, a former employee filed an action against her former employer, alleging both individual and representative violations of the California Labor Code Private Attorneys General Act (PAGA). The employer, however, moved to compel arbitration, asserting that the parties' contract contained an arbitration clause. The employee argued, and the trial and appellate court agreed, that the arbitration clause was invalid under a California Supreme Court case invalidating contractual waivers of the right to bring representative claims under PAGA. The United States Supreme Court, however, concluded that the FAA preempted that California Supreme Court decision, that the former employer was entitled to enforce the arbitration agreement insofar as it mandated arbitration of former employee's

9

individual PAGA claim, and that the former employee lacked statutory standing to maintain the representative PAGA claims.

¶ 22    Here, however, *Viking River Cruises, Inc.*, 596 U.S. 639 does not apply, as Morgan has never challenged the validity of the arbitration agreement or disputed the arbitrability of the questions brought before the arbitrator. Morgan demanded arbitration over his claims that the loan agreement violated Illinois law. Moreover, when Silver moved to dismiss those claims based on the parties' contractual choice of law, Morgan never disputed the arbitrator's authority to resolve that question.

¶ 23    Morgan, however, contends that the arbitrator "exceeded his powers" by "issuing an award that declares valid and enforceable a loan declared void by the Predatory Loan Prevention Act" and holding "that an agreement made illegal by statute should be given effect." Although the arbitrator dismissed Morgan's claims on the basis that the arbitrator was "bound by [the parties'] choice of law" in the arbitration agreement, the question resolved by the arbitrator was not whether the loan agreement was "valid and enforceable" or if it "should be given effect." Rather, the arbitrator resolved which state's law applied under the parties' arbitration agreement, a question that was clearly within the arbitrator's authority to answer.

¶ 24    Furthermore, even if we did find that the arbitrator made an error of law in determining that Utah law applied, "[a]n error of law does not provide a basis for overturning an arbitration decision." *Munizzi v. UBS Financial Services, Inc.*, 2021 IL App (1st) 201237, ¶ 46. "[A]n arbitration award will not be overturned or set aside because it is illogical, inconsistent, or contains errors in judgment or a mistake of law or fact." *Beatty v. Doctors' Co.*, 374 Ill. App. 3d 558, 563 (2007) (citing *Galasso v. KNS Cos.*, 364 Ill. App. 3d 124, 130 (2006)). Because the parties bargained to have their disputes settled by an arbitrator, and not a judge, and they agreed to have

10

the arbitrator decide Morgan's Illinois law claims, including whether the contract's choice of law provision applied, we do not disturb the arbitrator's decisions on those issues. *Ismie Mutual Insurance Co. v. Michaelis Jackson & Associates, LLC*, 397 Ill. App. 3d 964, 970 (2009) ("Even if the appellate court determines that the arbitrator made an error in judgment on a legal issue, that error does not create grounds for vacating an arbitrator's decision when the interpretation of the law is entrusted to the arbitrator."). As the United States Supreme Court has stated, and our supreme court has endorsed:

> " 'Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact. A contrary course would be a substitution of the judgment of the Chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of the litigation.' " *Garver v. Ferguson,* 76 Ill. 2d 1, 9 (1979), quoting *Burchell v. Marsh,* 58 U.S. 344, 349 (1854).

¶ 25    Morgan further asserts that an arbitrator exceeds his power when he "appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." This argument implicates the "manifest disregard of the law" standard, which provides that a court may vacate an arbitration award where it is shown that the arbitrator deliberately disregarded what they knew to be the law. *TruServ Corp. v. Ernst & Young, LLP*, 376 Ill. App. 3d 218, 225 (2007)

("an arbitration award may be subject to vacatur for misapplication of the law where it is shown that the arbitrators deliberately disregarded what they knew to be the law.")

¶ 26    As the appellate court has previously noted, the "manifest disregard of the law" standard provides an "almost nonexistent standard of review" that is "virtually impossible to meet." *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 106 (1995).

> "[T]o vacate an arbitration award for manifest disregard of the law, there must be something beyond and different from mere error in law or failure on the part of the arbitrators to understand or apply the law; it must be demonstrated that the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did." (Citations omitted) *Id*. at 107.

¶ 27    Even assuming that the arbitrator resolved the question erroneously—that Morgan's characterization of the law is accurate and that under *Viking River Cruises, Inc.,* the arbitrator should have found that Morgan "had a non-waivable right to void the *** loan under the [Predatory Loan Prevention Act] and other Illinois statutes"—there is no evidence that the arbitrator's decision was based on a deliberate disregard of the law. To the contrary, in ruling in favor of Silver, the arbitrator explicitly considered Morgan's arguments under *Viking River Cruises, Inc.*, but found the case to be inapplicable. The decision does not evidence a deliberate disregard of the law, but rather the arbitrator's interpretation of the language of the agreement within the context of what he understood the law to be.

¶ 28    Finally, Morgan contends that the arbitration award should be vacated because it "violates public policy" as set out in the Predatory Loan Prevention Act.

¶ 29    Illinois courts have generally recognized a rationale, grounded in common law, to vacate arbitration awards that are "repugnant to *** public policy." See *American Federation of State,*

*County & Municipal Employees, Council 31 v. Department of Central Management Services*, 173 Ill. 2d 299, 307 (1996) (*AFSCME*). Applying the public policy exception requires a two-step analysis in which the reviewing court must determine (1) "whether a well-defined and dominant public policy can be identified" and, if so, (2) "whether the arbitrator's award, as reflected in his interpretation of the agreement, violated the public policy." *Id.* at 307-08. In addition to being well-defined and dominant, the public policy identified must also be ascertainable "by reference to the laws and legal precedents and not from generalized considerations of supposed public interests." (Internal quotation marks omitted.) *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983).

¶ 30     This court, however, has previously expressed skepticism that the public policy exception is applicable in cases that do not arise from a collective bargaining agreement (CBA). See *Munizzi*, 2021 IL App (1st) 201237, ¶¶ 26-35. In *Munizzi*, this court explained that the Arbitration Act specifies different treatment for awards arising from a CBA, that the public policy exception has only been utilized in cases arising from a CBA, and that no cases outside of the CBA context have found the exception applicable. *Id.*; see also *AFSCME*, 173 Ill. 2d at 307 ("the historical context of the [public policy] exception is grounded in common law" and, therefore, "a court will not enforce *a collective-bargaining agreement* that is repugnant to established norms of public policy." (Emphasis added)).

¶ 31     Although Morgan does not explicitly reference this court's decision in *Munizzi*, he contends that the public policy exception does not only apply to cases involving a CBA. Morgan asserts that there is no basis for such a limitation, listing five cases as other "examples" of when arbitration awards have been voided as contrary to public policy. We note that four of the five cases cited by Morgan are from other states and federal courts, and accordingly, they are not

binding on this court. See *Travel 100 Group, Inc. v. Mediterranean Shipping Co. (USA) Inc.*, 383 Ill. App. 3d 149, 157 (2008) ("a decision from another jurisdiction is not binding on this court."). As for the remaining case, *AFSCME*, 173 Ill. 2d at 307, Morgan characterizes the case as finding that "[a]n [arbitration] award reinstating a Department of Children & Family Services employee who provided a false report regarding the well-being of three children" to be contrary to public policy. Morgan omits, however, that *AFSCME* involved a CBA. See *id.* at 306 ("Courts have crafted a public policy exception to vacate arbitral awards *which otherwise derive their essence from a collective-bargaining agreement*."). Accordingly, we are unpersuaded by Morgan's argument that the public policy exception extends beyond the collective bargaining agreement context.

¶ 32    Nevertheless, even if we did apply the public policy exception, we would not find a basis to vacate the arbitration award here. Morgan contends that the Predatory Loan Prevention Act specifies the public policy of Illinois when it "declares contracts for interest in excess of 36% void" and expressly states that its "purpose *** is to protect consumers from predatory loans." See 815 ILCS. 123/15-1-5 (West 2022). As noted above, however, Morgan was aware that the loan application would be "receive[d] and process[ed] *** the same as if [Morgan] submitted it to [Silver] in person" in Utah, and agreed that Utah law would govern the parties' loan agreement. And Morgan is still "protect[ed] *** from predatory loans," by the Utah consumer protection law, under which he may ask the Utah court to declare the agreement unenforceable and seek penalties. In these circumstances, we do not find that the arbitration award should be vacated as violative of Illinois public policy.

¶ 33    Following our entry of the above decision, Morgan petitioned for leave to appeal to the supreme court. The supreme court initially denied Morgan's petition, and Morgan moved to

reconsider the denial. In Morgan's motion for reconsideration, he stated that subsequent to his initial filing of the petition for leave to appeal, the Illinois Department of Financial and Professional Regulation (IDFPR) issued an order to cease and desist against Silver on May 19, 2025. Morgan stated that this court had held that Silver's loans "did not violate Illinois public policy," but the IDFPR's order held "the opposite."

¶ 34    Thereafter, the supreme court again denied Morgan's petition for leave to appeal, but instructed this court to vacate our judgment, "reconsider the matter in light of" the IDFPR's order, and "determine if a different result is warranted." Accordingly, this court vacated our prior judgment, and ordered the parties to submit supplemental briefs addressing the significance of the IDFPR's order.

¶ 35    In Morgan's supplemental brief, he contends that this court should reconsider our prior judgment in light of the IDFPR's order. Morgan contends that this court wrongly "held that public policy was not violated because Mr. Morgan agreed to application of Utah law," and this court should "follow the IDFPR decision as stating Illinois public policy against predatory internet lending."

¶ 36    In the IDFPR's order, the IDFPR found that Silver's loan to Morgan violated the Predatory Loan Prevention Act "because contracted charges on the loan exceeded a 36% annual percentage rate." The IDFPR further found that the contractual loan terms "including but not limited to terms relating to Utah law governing the loan and that the loan was 'made' in Utah" were "prohibited waivers" and accordingly, those terms were "null and void for all loans made in violation of" the Predatory Loan Prevention Act. The IDFPR explained, however, that "[t]his conclusion of law is not intended to address the validity of the purported arbitration agreement which is not relevant to this Order to Cease and Desist." Finally, the IDFPR concluded that Silver had "no right to collect,

attempt to collect, receive or retain any principal fee, interest, or charges related to the loans made to consumers in violation of" the Predatory Loan Prevention Act. The IDFPR ordered Silver to "CEASE AND DESIST from contracting for or receiving charges exceeding a 36% annual percentage rate" and to "CEASE AND DESIST from collecting, attempting to collect, receiving any principal, fee, interest or charges related to any loan made to a consumer in Illinois exceeding a 36% annual percentage rate."

¶ 37    The cease and desist order that was sent to Silver included a form entitled "RIGHT TO REQUEST A HEARING" which provided that Silver could request a hearing "in writing within 10 days of the date of service," and that "[a]bsent a request for a hearing, this Order shall constitute a final administrative order subject to Administrative Review Law, 735 ILCS 5/3-101 *et seq.*"

¶ 38    In Silver's responsive supplemental brief, it contends that this court should give no weight to the IDFPR order and should reinstate our prior judgment. Silver states that it was never given notice of any complaint filed against it with the IDFPR, or an opportunity to respond or otherwise contest any of the proceedings before the IDFPR. Silver states that it has been unable to obtain a copy of the complaint that led to that order, and speculates that the administrative proceeding may have been initiated after Morgan was unsuccessful in arbitration in 2023. Silver argues that Morgan should not be permitted to "bootstrap the Admin[istrative] Order to overcome established law," or to use the administrative process to obtain "another bite of the apple." Although Silver acknowledges that it received an email from the IDFPR containing the cease and desist order, it contends that it had already ceased offering loans to Illinois residents in 2022, and that it has not "engaged in any lending activity in the state of Illinois for over three (3) years."

¶ 39    In reply, Morgan does not dispute that Silver did not receive notice of the administrative action prior to the entry of the cease and desist order. Rather, Morgan suggests that such notice is

16

not necessary, because a cease and desist order "may be issued prior to a hearing." 815 ILCS 123/15-10-5(d) (West 2024). Morgan points out that Silver did not timely request a hearing within 10 days of service of the order, and accordingly, the cease and desist order became final.

¶ 40    Before considering the IDFPR order, as we have been directed to do, we must clarify the scope of this appeal.  On this issue, we find guidance in *Thompson v. Gordon*, 356 Ill. App. 3d 447 (2006), in which the appellate court considered an interlocutory appeal in a wrongful death suit stemming from a fatal car accident. Plaintiff's expert, a civil engineer licensed in the District of Colombia, submitted an affidavit opining that the defendants failed to meet the standard of care in designing the roadway at or near the site of the accident. *Id*. at 449. Defendants moved to strike the affidavit, arguing that plaintiff's expert was not qualified to render a professional opinion because he was not licensed as a professional engineer in Illinois. *Id*. at 449-50. The trial court granted the motion to strike, relying on *Van Breemen v. Department of Professional Regulation,* 296 Ill. App. 3d 363 (1998), an administrative review case in which the appellate court affirmed the Department of Professional Regulation's conclusion that a different individual had engaged in unlicensed practice of professional engineering where he offered services as an expert witness.

¶ 41    In the initial interlocutory appeal, the appellate court reversed the order striking plaintiff's expert's affidavit, finding the affidavit admissible because the expert's lack of an Illinois professional engineering license "goes to the weight of [the expert]'s testimony, not his competency." *Thompson v. Gordon*, 349 Ill. App. 3d 923, 929 (2004), *vacated,* 356 Ill. App. 3d 447 (2005).

¶ 42    Thereafter the supreme court issued a supervisory order directing the court to vacate its judgment, and reconsider in light of a subsequent cease and desist order issued by the Department

of Regulation, finding that plaintiff's expert had "engaged in the unlicensed practice of professional engineering." *Thompson*, 356 Ill. App. 3d at 450-51.

¶ 43    On review following the supervisory order, the appellate court explained that the questions posed in the appeal—whether trial court correctly struck plaintiff's expert affidavit—and the question posed in the administrative proceeding—whether the expert was engaged in unlicensed practice—were distinct. The appellate court stated:

> "The present case, however, comes to this court, not on judicial review of an administrative decision, but, rather, on judicial review of a trial court's ruling to strike the affidavit of an expert opinion witness in a civil action. *** Here, defendants have presented to this court the Department's cease and desist order, which contains the Department's findings and ruminations on the proceedings at issue. Defendants claim that the Department's cease and desist order should, therefore, control the trial court's decision as well as this court's. Defendants' intimation that an administrative body's decision is an adequate substitute for judicial review ignores the functional difference between these two types of procedural rights." *Id*. at 455.

¶ 44    The appellate court noted that the Department's cease and desist order could be "relevant evidence," but it was "not binding on the trial court in considering whether to allow [the expert witness] to testify ***, or on this court in determining whether the trial court properly ruled on defendants' motion to strike." *Id*. at 456.  Rather, the appellate court continued to conclude that the trial court's "decision to strike [the expert witness]'s affidavit on the basis that he lacked an Illinois license reflects that the trial court failed to recognize the legal principles involved in determining whether [his] testimony would assist the trier of fact or offer knowledge and

18

application of principles of science beyond the ken of the average juror." *Id*. at 461 (internal citations and quotation marks omitted.)

¶ 45    Like in *Thompson*, this court is not tasked with the administrative review of the IDFPR's cease and desist order. Rather, this appeal concerns a distinct question, which shares little commonality with that which was addressed by the IDFPR. The question posed in this appeal is not whether the loan violated the Predatory Loan Prevention Act, but rather whether the arbitration award should be vacated because the arbitrator exceeded his powers in issuing it. As the IDFPR recognized in its order, its conclusions were not applicable to "the purported arbitration agreement which is not relevant to this Order to Cease and Desist."

¶ 46    Even if we could find that the cease and desist order is "relevant evidence" as to whether the loan violated the Predatory Loan Prevention Act, its conclusion would not be binding on this court. *Id*. at 456. In the circumstances here, we are unconvinced that the cease and desist order entered prior to a hearing, in a proceeding in which Silver did not receive notice or participate, is relevant evidence here. Importantly, the cease and desist order was entered long after the judgment that this court was reviewing in this appeal, and there can be no argument that the arbitrator deliberately disregarded the law based on his failure to predict how the IDFPR would ultimately conclude on the issue. See *TruServ Corp.*, 376 Ill. App. 3d at 225 (2007) ("an arbitration award may be subject to vacatur for misapplication of the law where it is shown that the arbitrators deliberately disregarded what they knew to be the law.").

¶ 47    Nonetheless, even if we agreed that the IDFPR's order shows that the arbitrator made an error of law, it would have no bearing on this court's prior judgment for the reasons previously set forth. As this court explained, "[a]n error of law does not provide a basis for overturning an arbitration decision." *Munizzi*, 2021 IL App (1st) 201237, ¶ 46; see also *Ismie Mutual Insurance*

*Co.,* 397 Ill. App. 3d at 970 (a legal "error does not create grounds for vacating an arbitrator's decision when the interpretation of the law is entrusted to the arbitrator."); *Garver,* 76 Ill. 2d at 9 ("If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error either in law or fact."). We previously determined that the arbitrator made a decision that was within the bounds of his authority, and we found no evidence that the arbitrator's decision was based on a deliberate disregard of the law. Our consideration of the IDFPR order does not alter that conclusion.

¶ 48    Finally, we note that in Morgan's supplemental brief, he argues for the first time that this court erred in applying Illinois law to find that the public policy exception applies only to collective bargaining cases, and that we should have applied federal authority under the FAA, which he contends is not so limited. Morgan did not raise this argument in his petition for rehearing, and the supreme court's supervisory order was not an invitation for Morgan to raise new arguments, unrelated to the supreme court's mandate, to challenge this court's decision. See *Bond Drug Co. of Illinois v. Amoco Oil Co*., 323 Ill. App. 3d 190, 196 (2001) ("Precise and unambiguous directions in a mandate must be obeyed."). The supreme court's supervisory order unambiguously instructed this court  to "reconsider the matter in light of" the IDFPR's order, and we have done so.

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 50    Affirmed.